## JEUNG BOW v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. November 9, 1915.)

No. 9.

1. ALIENS ⬤⇒32—PROCEEDINGS FOR DEPORTATION OF CHINESE—RIGHT TO COUNSEL.

A proceeding before the immigration authorities for the deportation of a 'Chinese person is not a criminal prosecution, but the refusal of counsel to defendant in such proceeding, if shown, might be strong evidence that he was denied the fair hearing to which he is entitled.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. ⬤⇒32.]

2. ALIENS ⬤⇒32—EXCLUSION—PERSON LIKELY TO BECOME PUBLIC CHARGE.

The testimony of a Chinese alien that he had but $7 in money and no other property and had no relatives or friends in the United States *held* sufficient to warrant his exclusion or deportation as a person likely to become a public charge under Immigration Act Feb. 20, 1907, c. 1134, § 2, as amended by Act March 26, 1910, c. 128, § 1, 36 Stat. 263 (Comp. St. 1913, § 4244).

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. ⬤⇒32.]

3. ALIENS ⬤⇒32—PROCEEDING FOR DEPORTATION OF CHINESE—PROCEDURE—OATH OF INTERPRETER.

Where the official interpreter, acting under his oath of office, interprets the testimony in a Chinese exclusion proceeding, there is no necessity of his being specially sworn.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. ⬤⇒32.]

4. ALIENS ⬤⇒32—PROCEEDINGS FOR DEPORTATION OF CHINESE—WARRANT OF ARREST.

Although the rules of the department provide that a Chinese person arrested for deportation shall be permitted to inspect the warrant, where the defendant is unable to read English and is fully informed of the charge against him, it is immaterial that the warrant on which he was arrested was in cipher.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. ⬤⇒32.]

5. ALIENS ⬤⇒32—DEPORTATION OF CHINESE—PLACE TO WHICH DEPORTATION MAY BE ORDERED.

Under Act Feb. 20, 1907, c. 1134, § 35, 34 Stat. 908 (Comp. St. 1913, § 4284), providing that the deportation of aliens found after entry to be illegally within the United States "shall be to the transatlantic or transpacific ports from which said aliens embarked for the United States, or, if such embarkation was for foreign contiguous territory, to the foreign port at which said aliens embarked," a Chinese alien who came from China to Canada with the intention of being smuggled into the United States, and was so smuggled, may properly be deported to China instead of to Canada.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. ⬤⇒32.]

Appeal from the District Court of the United States for the Western District of New York.

Habeas corpus by Jeung Bow against the United States. From an order dismissing the writ, petitioner appeals. Affirmed.

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

This cause comes here on an appeal from the District Court of the United States for the Western District of New York, dismissing a writ of habeas corpus.

Dilworth M. Silver, of Buffalo, N. Y., for appellant.

John D. Lynn, U. S. Atty., of Rochester, N. Y., and Donald Bain, Asst. U. S. Atty., of Buffalo, N. Y.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. The appellant has been ordered by the Secretary of Labor to be deported to China on the ground that under the Chinese Exclusion Laws (Act May 6, 1882, c. 126, 22 Stat. 58) he belongs to the excluded classes, and on the farther ground that he is a person liable to become a public charge. He presented to the District Court of the United States for the Western District of New York his petition for a writ of habeas corpus upon the ground that he was in custody in violation of law for the following reasons:

1. That he is not an alien but a citizen of the United States by reason of having been born within this country.

2. That he had not had a fair hearing in that the government interpreter and prosecutor was one and the same person.

3. Because the interpreter was not sworn truthfully to interpret.

4. That the Secretary of Labor had no authority in law or jurisdiction to issue the warrant for his deportation as there is no proof to show that he embarked from an Asiatic port.

Return to the writ was duly made and upon the evidence submitted the writ was dismissed.

The testimony given by Jeung Bow at the hearing disposes of the objection that he is a citizen of the United States. He testified that he is a citizen of China; that his father and mother are both of Chinese parentage; that he himself was born in that country; that he had always been a laborer; that he left China in March or April, 1913, and went directly to San Francisco; that he had never been in the United States before; that he lived in San Francisco a few months over a year but did not know the name of any street in the city or of any person there; that he had no papers showing his right to enter or remain although he claimed to have had such a paper and to have lost it.

There is nothing in the record which shows that this man did not have a fair hearing. On the contrary, it appears affirmatively that he did have such a hearing. He testified that he had been fairly treated since his apprehension, and that he did not wish his hearing adjourned to enable him to communicate with friends. The nature of the proceedings were fully explained to him and he was informed as to his rights.

[1] It is objected, however, that there is nothing in the case to show that the man had counsel, or that he could have had counsel at the hearing before the inspector, and it is claimed that this fact invalidated the whole proceeding.

The sixth amendment of the Constitution reads as follows:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

The proceeding under review is not a criminal prosecution, but an administrative hearing before the immigration authorities, and it need not be conducted in accordance with the procedure and rules of evidence which are observed in the courts of law.

Whether a Chinaman arrested and brought before an administrative board or immigration officials conducting an investigation into his right to be in this country has or has not a constitutional right to have the assistance of counsel for his defense is a matter we need not now consider. If in the case at bar Jeung Bow had asked for counsel and been refused, it would at least be strong evidence to show that he had been denied the fair hearing to which he is entitled under the statute, even though it should be held that it involved no violation of any constitutional right. But even that question does not arise in this case. For the record shows that the appellant was expressly informed that he had a right to be represented by counsel, and was asked whether he wished to be so represented, and stated that he did not. He was then asked whether he waived all rights of attorney and was ready to proceed with the hearing, and he replied that he was.

[2] The act of Congress of February 20, 1907, amended March 26, 1910, and entitled "An act to regulate the immigration of aliens into the United States," provides for the exclusion among others of paupers and persons likely to become a public charge. U. S. Stat. at Large, vol. 36, p. 263. At the hearing the appellant testified that he had at that time on his person about $7; that he had no baggage and no other property or money; that he had no friends or relations in the United States who could come to his aid in case of distress.

[3] The objection that the interpreter was not sworn to interpret truthfully is without merit. He was the official interpreter acting under his oath of office, and there is no more reason for putting him under a special oath in each separate case where his services are employed than there is for swearing a judge anew at each trial over which he presides. We have ruled on this question before and see no reason for altering the opinion heretofore expressed. Lee Sim v. United States, 218 Fed. 432, 134 C. C. A. 232 (1914).

[4] It appears that Jeung Bow was taken into custody upon a code telegraphic warrant which reads:

"Arrow Lum Chin Yuk Ho Jung Lay and Jeung Bow Liken Ethical Erudite Relay Ten Each."

The translation follows:

"Arrest Lum Chin Yuk, Ho Jung Lay and Jeung Bow and bring before yourself for hearing forwarding record of proceedings to the department; persons likely to become public charges at time of entry; entered the United States without inspection; entered in violation of section 36 of the Immigra-

tion Act of February 20, 1907 [Comp. St. 1913, § 4285]; authority granted for release from custody under bond in the sum of ten hundred dollars each."

The telegram was signed by the immigrant inspector in charge. The rules of the immigration department provide that a person taken into custody shall be permitted to inspect the warrant, and that if, as in this case, he is allowed to be tried upon a warrant which must necessarily be unintelligible to all except those who are familiar with the code of the Department of Labor, that would be a useless proceeding. As a matter of fact, Jeung Bow was unable to read English, and it made little difference whether the telegraphic warrant was in code or not. He was fully informed as to the charge against him and that was the essential thing he needed to know. Whether the telegram was in cipher or not is unimportant.

[5] The act to regulate the immigration of aliens into the United States (U. S. Stat. at Large, vol. 34, p. 898) provides, in section 35, as follows:

"The deportation of aliens arrested within the United States after entry and found to be illegally therein, provided for in this act, shall be to the transatlantic or transpacific ports from which said aliens embarked for the United States; or, if such embarkation was for foreign contiguous territory, to the foreign port at which said aliens embarked for such territory."

The appellant's counsel claims that there is no proof to justify the conclusion that this man embarked from an Asiatic port of China, and therefore there is no right to order his deportation to China. But at his hearing he admitted that he left Hong Kong in March or April, 1913, and landed in San Francisco coming on one of the Canadian Pacific boats; that that was the first time he had ever been in the United States, and he denied positively that he had ever been at any time in Canada. The immigrant inspector, however, found as a fact that he entered the United States surreptitiously and without inspection at Buffalo on May 16, 1914, and was in the United States in violation of the Chinese Exclusion Act. We had occasion to construe this provision of the statute in Lee Sim v. United States, supra, and we there held that a person can be properly deported to China instead of to Canada if he comes from China to Canada with the intention of being smuggled into the United States. So that whether he came from China into the United States at San Francisco as he claims, or through Canada as the inspector believed, makes no difference in the final result.

It sufficiently appears that this man was born in China, has always been a laborer, entered the country without inspection, has no papers in his possession entitling him to remain, is without means and liable to become a public charge, and that he has had a fair hearing. Under the Chinese Exclusion Laws he has no right to remain in the United States.

The appeal is dismissed.