In the Matter of the Petition for Review of Jose Marques COUTO, Petitioner,

v.

**Edward J. SHAUGHNESSY, as District Director of Immigration and Naturalization for the District of New York, Respondent.**

United States District Court
S. D. New York.
Sept. 3, 1954.

---

Nemeroff, Jelline, Danzig & Paley, New York City, for petitioner, Aaron L. Danzig, New York City, of counsel.

J. Edward Lumbard, U. S. Atty. for the Southern Dist. of New York, New York City, for respondent, Harold J., Raby, Harold R. Tyler, Jr., Asst. U. S. Atty., New York City, Lester Friedman, Atty., Immigration and Naturalization Service, New York City, of counsel.

DAWSON, District Judge.

This is a motion by petitioner for a temporary injunction to restrain his deportation, pending a determination by this Court of a petition to review the deportation proceedings.[1] Respondent cross-moves for summary judgment.

It appears from the papers submitted on the motion that the following material facts exist without substantial controversy:

1. Petitioner is an alien, a native and citizen of Portugal.

2. Petitioner entered the United States as a seaman aboard the vessel "Areti", at Baltimore, Maryland, on February 24, 1953.

3. Petitioner overstayed his seaman's leave.

4. On April 22, 1954, petitioner made a statement to the Immigration and Naturalization Service in which he admitted that he was an alien, had entered on a temporary seaman's permit, and had overstayed his leave.

5. On April 23, 1954, a warrant for petitioner's arrest was issued, and deportation proceedings commenced.

6. On May 6, 1954, petitioner was afforded a hearing before a Special Inquiry Officer of the Immigration and Naturalization Service.

7. Petitioner appeared at the said hearing and was represented by counsel of his own choosing.

8. An official interpreter of the Immigration and Naturalization Service was present at the hearing, and interpreted for the petitioner.

9. The official interpreter was not sworn.

10. Petitioner was shown his sworn statement, and under oath, asked if the statements therein were true, to which question he answered in the affirmative.

11. Petitioner's counsel objected to this question and to the inclusion of the sworn statement into the record.

12. At the conclusion of the hearing, it was the decision of the Special Inquiry Officer that petitioner was deportable.

13. An appeal was taken to the Board of Immigration Appeals, which appeal was dismissed on June 10, 1954.

Petitioner contends that the hearing under which the deportation order was issued was void (1) because it did not comply with the Administrative Procedure Act, 5 U.S.C. § 1001 et seq., 5 U.S.C.A. § 1001 et seq., in that the hearing did not comply with the procedures of the Act and was held before a Special Inquiry Officer of the Immigration and Naturalization Service rather than an Examiner having the status and tenure prescribed by the Administrative Procedure Act, (2) that assuming the hearing did not have to comply with the Administrative Procedure Act, there was not legally competent evidence under the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1101 et seq., to support the deportation order, (3) that assuming the requirements of the Immigration and Nationality Act were complied with, Section 242(b) of that Act,

---

1. A recent decision of the Court of Appeals for this Circuit holds that an action for injunctive relief under Section 10 of the Administrative Procedure Act, 5 U.S.C.A. § 1009, is a proper procedure for testing the validity of a deportation order, and that the only necessary defendant is the District Director of Immigration. Pedreiro v. Shaughnessy, 213 F.2d 768.

8 U.S.C.A. § 1252(b), violated the due process provisions of the Constitution in that the Special Inquiry Officer was authorized to present the evidence as well as to conduct the hearing, and (4) that due process was violated in that the interpreter at the deportation hearing was not sworn.

Respondent contends in its motion for summary judgment that all provisions of the Immigration and Nationality Act were complied with; that there was no denial of substantial justice to the petitioner in the course of the deportation hearing or violation of the due process provisions of the Constitution; that there is no issue of fact to be determined by this Court; that therefore, its motion for summary judgment should be granted.

## I.

In support of his contention, petitioner urges that the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., sets forth the procedure which must be used in a deportation hearing [2] and further, establishes the status and tenure of the hearing officer before whom the proceeding is conducted, unless subsequent legislation, here Section 242(b) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1252(b), *expressly* provides that a different procedure shall be used and *expressly* sets forth different requirements of status and tenure for the hearing officer.

Petitioner contends that Section 242 (b) while expressly setting forth a procedure to be followed in deportation hearings different from that set out in the Administrative Procedure Act and stating that it shall be the "sole and exclusive procedure for determining the deportability of an alien", fails expressly to over-ride the following procedural requirements of the Administrative Procedure Act:

1. Section 5, 5 U.S.C.A. § 1004(c): No hearing officer shall consult any person or party on any fact in issue unless upon notice and opportunity for all parties to participate.

2. Section 5, 5 U.S.C.A. § 1004(c): No officer, employee or agent engaged in the performance of investigative or prosecuting functions for any agency in any case shall in that, or in a factually related case, participate or advise in the decision, recommended decision or agency review.

3. Section 8, 5 U.S.C.A. § 1007(b): Prior to each recommended, initial, or tentative decision, the parties shall be afforded a reasonable opportunity to submit for consideration of the officers participating in such decision (1) proposed findings and conclusions or (2) exceptions to the decisions or recommended decisions of subordinate officers or to tentative agency decisions and (3) supporting reasons for such exceptions or proposed findings or conclusions.

▇ This same question was presented in the recent case of Marcello v. Ahrens [3] where the court said that the argument that the Administrative Procedure Act has the standing of a Constitutional amendment and Congress is powerless to provide for administrative hearings which do not conform to it has no validity. I agree.

▇ The language of Congress is unmistakable. It provided in the later Act that the procedure therein provided shall be the " * * * sole and exclusive

---

2. See Wong Yang Sung v. McGrath, 1950, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616; "The Administrative Procedure Act In Operation", 29 N.Y.U.L.Rev. 1173 (June, 1954).

In the Wong Yang Sung case, supra, it was held that administrative hearings in proceedings for the deportation of aliens must conform to the requirements of the Administrative Procedure Act. Thereafter, Congress, in the Supplemental Ap-

propriation Act for the year 1951, 64 Stat. 1048, 8 U.S.C. § 155a, Supp.1952, expressly exempted deportation proceedings from the Administrative Procedure Act. The Immigration and Nationality Act of 1952 provided expressly that the procedure therein should be the procedure for determining the deportability of an alien.

3. 5 Cir., 1954, 212 F.2d 830.

procedure for determining the deportability of an alien * * *." This Act, to the extent that it is inconsistent with the earlier Administrative Procedure Act, must control.

But, in the instant case, petitioner goes further. He says, nowhere in Section 242(b) are set forth express requirements concerning the status and tenure of the Special Inquiry Officer different from those specified in Section 11, 5 U.S.C.A. § 1010, of the Administrative Procedure Act. (Respondent concedes these requirements were not met.) Petitioner, therefore, contends that the exception set forth in Section 12 of the Administrative Procedure Act, 5 U.S. C.A. § 1011, viz., that the subsequent legislation shall expressly set forth different requirements, has not been met and, therefore, the provisions of the Administrative Procedure Act with respect to the status and tenure of the Special Inquiry Officer are controlling. The question is thus presented whether the language of Section 242(b) of the Immigration and Nationality Act of 1952, 8 U.S. C.A. § 1252(b), expressly sets forth different status and tenure requirements than those used in the Administrative Procedure Act so that Special Inquiry Officers under the Immigration and Nationality Act of 1952 fall within the exception of Section 12 of the Administrative Procedure Act, 5 U.S.C.A. § 1011.

In interpreting the meaning and usage of the term "Special Inquiry Officer", one must look to Section 101(b) (4) (Definitions) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1011,[4] and read that section together with Section 242(b).

The Attorney General is given the power to choose *any immigration officer* to be a Special Inquiry Officer. Inasmuch as Section 11 of the Administrative Procedure Act of 1946, 5 U.S.C.A. § 1010, sets forth several requirements for hearing examiners which could not be met by "any immigration officer", it is difficult to conceive of an intent upon the part of Congress to so legislate that the Attorney General would be granted powers which could not be fulfilled if the Administrative Procedure Act was controlling. It is therefore consistent with reason and good judgment to find that where Congress established a procedure to be used in a deportation hearing different from that set forth in the Administrative Procedure Act, and in so doing, expressly stated that the hearing be conducted by a Special Inquiry Officer, it intended its definition of Special Inquiry Officer, which vested in the Attorney General the power to appoint and determine the status and tenure of the hearing officer, to control independent of the provisions of Section 11 of the Administrative Procedure Act, 5 U.S.C.A. § 1010.

Petitioner contends that this is contrary to the expressed legislative intent of the drafters of the Immigration and Nationality Act of 1952 and to support his position he cites statements by sponsors of the bill, Senator McCarren (Nev.) and Representative Walter (Pa.), to the effect that the Administrative Procedure Act is applicable to the Immigration and Nationality Act of 1952. See 98 Cong.Rec. 5778 and 98 Cong.Rec. 4416, respectively.[5] However, upon reading

---

4. "The term 'special inquiry officer' means any immigration officer who the Attorney General deems specially qualified to conduct specified classes of proceedings, in whole or in part, required by this chapter to be conducted by or before a special inquiry officer and who is designated and selected by the Attorney General, individually or by regulation, to conduct such proceedings. Such special inquiry officer shall be subject to such supervision and shall perform such duties, not inconsistent with this chapter, as the Attorney General shall prescribe."

5. These statements were:
*Senator McCarren:*
"The Administrative Procedure Act is made applicable to the bill. The Administrative Procedure Act prevails now. The Senator need not worry about its not being the law, because the Administrative Procedure Act covers the very point which the Senator is attempting to reach."
*Representative Walter:*
"I am sure that if the gentleman would look at page 163, paragraph 46, he will find that the law as it was before the

the portions of the Congressional Record from which these quotes were taken, it appears that the Members of Congress were concerned with judicial review. And in the conference report on the bill, the members on the part of the House, of whom Representative Walter was one, stated with respect to the Administrative Procedure Act:

> "Having extensively considered the problem of judicial review, the conferees are satisfied that procedures provided in the bill, adapted to the necessities of national security and the protection of economic and social welfare of the citizens of this country, remain within the framework and the pattern of the Administrative Procedure Act. The safeguard of judicial procedure is afforded the alien in both exclusion and deportation proceedings."
> 2 U.S.Code Congressional and Administrative News, p. 1754 (1952).

It would thus appear that where referring to the Administrative Procedure Act and its safeguards, the sponsors of the bill were speaking with reference to judicial review.[6] This position has been supported in a recent decision. See Rubinstein v. Brownell, 1953, 92 U.S.App. D.C. 328, 206 F.2d 449, affirmed 346 U.S. 929, 74 S.Ct. 319.

I therefore conclude that in reading Section 242(b) and Section 101(b)(4) (Definitions) of the Immigration and Nationality Act of 1952 together, Congress has specifically granted to the Attorney General the power to appoint and maintain, with respect to status and tenure, Special Inquiry Officers to conduct deportation proceedings without reference to the status and tenure provisions of the Administrative Procedure Act.[7]

## II.

Petitioner contends, however, that even if the Immigration and Nationality Act of 1952 controls the status and tenure of Special Inquiry Officers, Section 242(b) of the Act denies due process and violates the Fifth Amendment in that it authorizes the Special Inquiry Officer also to present evidence.

The Supreme Court of the United States in Harisiades v. Shaughnessy[8] said—

> "* * * any policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government. Such matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry".

Here, the proceeding is executive in nature, as in the Harisiades case. Congress has the power to order the deportation of undesirable aliens and may establish the appropriate procedure.[9] Therefore, a deportation hearing held in accordance with the provisions of a statute does not violate due process merely because some aspects of a judicial hearing are not followed. In order to contend that due process has been violated, there must be a substantial denial of justice.[10] That the statute[11] prescribes

---

House adopted this amendment to an appropriation bill, has been reinstated and that the decision of the Supreme Court in the Sung case will be the law of the land when this Code is adopted." (Page 163, paragraph 46, reference is to the specific section 403(a) (47) repealing the provision of the Supplemental Appropriation Act of 1951 which exempted immigration and naturalization hearings from the Administrative Procedure Act.)

6. Judicial Review is permitted by Sec. 10 of that Act. 5 U.S.C.A. § 1009.

7. Section 11, 5 U.S.C.A. § 1010.

8. 1951, 342 U.S. 580, 588, 589, 72 S.Ct. 512, 519, 96 L.Ed. 586.

9. Ng Fung Ho v. White, 1922, 259 U.S. 276, 280, 42 S.Ct. 492, 66 L.Ed. 938; Bugajewitz v. Adams, 1913, 228 U.S. 585, 33 S.Ct. 607, 57 L.Ed. 978.

10. Chin Yow v. United States, 1908, 208 U.S. 8, 28 S.Ct. 201, 52 L.Ed. 369.

11. 66 Stat. 209, 8 U.S.C.A. § 1252(b): "A special inquiry officer shall conduct proceedings under this section to determine

that a Special Inquiry Officer who conducts the hearing may also present evidence, by itself, is not a proposition so unreasonable as to constitute a substantial denial of justice and thus a deprivation of due process.[12]

### III.

Petitioner contends further that the deportation order was not based on legally competent evidence under the Immigration and Nationality Act of 1952. There is nothing in the record which indicates that this contention has merit. Petitioner is in this country illegally. On April 22, 1954, petitioner made a statement to the Immigration and Naturalization Service in which he admitted this fact, to wit, that he was an alien who had entered on a temporary seaman's permit, and that he had overstayed his leave.

A deportation hearing was held on May 6, 1954, at which petitioner was represented by counsel. An official interpreter of the Immigration and Naturalization Service was present and interpreted. At the hearing, petitioner was asked whether the answers given in a sworn statement taken from him previously in which he admitted that he was an alien who had entered this country as a seaman and had illegally overstayed his leave were true. Petitioner stated that the facts therein were correct. Petitioner's counsel objected to these questions and to the introduction into the record of the sworn statement on the ground that they intended to incriminate the petitioner.

■■■ A deportation proceeding is not, in nature, a criminal proceeding. Nor is the statement that one is an alien a confession of criminality. United States ex rel. Bilokumsky v. Tod.[13] Petitioner could have been compelled by

legal process to state whether he was an alien, and how he had arrived in the United States; petitioner's silence, if he had remained silent, could have been construed as evidence of persuasive character. See United States ex rel. Bilokumsky v. Tod, supra, and cases cited there.

■■■ There appears to be nothing in the manner in which petitioner's sworn statement was taken that would make it inadmissible in a deportation proceeding; nor anything in the record to give credence to the belief that the decision of the Special Inquiry Officer was not based on substantial competent evidence with respect to (1) petitioner's alienage, (2) petitioner's illegal residence in the United States.

Neither petitioner nor his counsel have raised the substantive question of non-deportability under the present statute.

### IV.

■■■ Petitioner also contends that due process has been violated because the official interpreter of the Immigration and Naturalization Service at his deportation hearing had not been sworn. Not only does the statute fail to make this a necessary requirement (see 8 C.F.R. 242.54(h) ), but this Circuit has held in a number of instances that the contention is without merit. Jeung Bow v. United States;[14] Lee Sim v. United States.[15] Said Rogers, J., in the Jeung Bow case:

> "He was the official interpreter acting under his oath of office, and there is no more reason for putting him under a special oath in each separate case where his services are employed than there is for swearing a judge anew at each trial over which he presides."

Shaughnessy, 2 Cir., 1952, 197 F.2d 65; Harisiades v. Shaughnessy, supra.

the deportability of any alien, and shall administer oaths, present and receive evidence, interrogate, examine, and cross-examine the alien or witnesses * * *."

12. Marcello v. Ahrens, 5 Cir., 1954, 212 F.2d 830, 837; U. S. ex rel. Catalano v.

13. 1923, 263 U.S. 149, 44 S.Ct. 54, 68 L.Ed. 221.

14. 2 Cir., 1915, 228 F. 868, 870.

15. 2 Cir., 1914, 218 F. 432, 436.

Conclusions of Law.

(1) That the hearing upon which the deportation order was based was conducted in accordance with the provisions of the Immigration and Nationality Act of 1952.

(2) That a Special Inquiry Officer of the Immigration and Naturalization Service is authorized by law to conduct a deportation proceeding.

(3) That there is no violation of due process by reason of the fact that the Special Inquiry Officer was authorized by the statute to present evidence in addition to his hearing functions.

(4) That the sworn confession of petitioner was properly admitted into evidence at the deportation proceeding.

(5) That the fact that the official interpreter of the Immigration and Naturalization Service was not sworn was not a violation of due process.

(6) That petitioner is properly deportable.

Motion for summary judgment granted. Motion for temporary injunction denied. Submit order.