**PEDREIRO**

v.

**SHAUGHNESSY, District Director of Immigration and Naturalization.**

No. 276, Docket 23091.

United States Court of Appeals, Second Circuit.

Argued May 4, 1954.

Decided July 1, 1954.

Nemeroff, Jelline, Danzig & Paley, New York City (Aaron L. Danzig, New York City, of counsel), for petitioner-appellant.

J. Edward Lumbard, U. S. Atty. for the Southern Dist. of New York, New York City (Philip M. Drake, New Rochelle, N. Y., and Lester Friedman, New York City, of counsel), for respondent-appellee.

Before CLARK, FRANK and MEDINA, Circuit Judges.

MEDINA, Circuit Judge.

This is an action by a deportee for a declaratory judgment and injunctive relief under the Administrative Procedure Act, § 10, 60 Stat. 243, 5 U.S.C.A. § 1009. Petitioner having exhausted his administrative remedies seeks a review of the proceedings resulting in a final order of deportation, claiming that his constitutional rights have been violated in that "the evidence adduced * * * was in contravention of * * * the Fifth Amendment in that your petitioner was deprived of due process of law and in that your petitioner was compelled to testify on matters which might tend to incriminate him, such as his entry into the United States and his purposes in coming to the United States."

The merits have not been considered, the court below having dismissed the case on motion pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., as the action was brought against the District Director of Immigration and Naturalization for the District of New York, without joining either the Attorney General or the Commissioner of Immigration and Naturalization.

To those who have spent the greater part of their professional lives manipulating procedural devices in the ebb and

flow of practice at the bar it sometimes seems that in the very areas of the law where simplicity and flexibility of procedure are most indispensable are found a morass of complexities. This case provides an illustration.

The aliens involved in deportation proceedings are often in poor financial circumstances; the validity of final orders of deportation generally, if not always, depends upon questions relating to the alleged infringement of the deportees' constitutional rights; their imprisonment or enlargement on bail and the actual deportation itself affect human relationships of the highest consequence. Under these circumstances it would seem that the courts must be able to spell out some simple formula, which will cut through red tape, face realities, and provide an expeditious and inexpensive remedy, with a minimum amount of procedural frills and a maximum amount of attention to the question of whether or not the administrative proceedings against the deportee have conformed to the requirements of due process.

■ And yet a careful perusal of the numerous decided cases referred to in Judge Dimock's scholarly and reasoned opinion, and certain other authorities cited in the briefs submitted by counsel for the parties, discloses refinements and conflicting views which make it a difficult task to find and apply controlling principles. The traditional remedy of habeas corpus as a means of reviewing the validity of an order of deportation is plainly inapplicable, as petitioner is not in custody, and one cannot blame him for unwillingness to gamble with his liberty which may not readily be regained. While counsel for respondent contend that the question is still open, whether or not a civil action for a declaratory judgment and injunctive relief under the Administrative Procedure Act, Section 10, supra, provides an alternative method for testing the validity of a deportation order, we shall follow Rubinstein v. Brownell, 1953, 92 U.S.App.D.C. 328, 206 F.2d 449, affirmed sub nom. Brownell v. Rubinstein, 1954, 346 U.S. 929, 74 S.Ct. 319. See contra, Batista v. Nicolls, 213 F.2d 20, decided by the Court of Appeals for the First Circuit on May 19, 1954.

■ Many decisions support the view that the Attorney General, or the Commissioner of Immigration and Naturalization, is an indispensable party,[1] but the holding by this Court in De Pinho Vaz v. Shaughnessy, 2 Cir., 1953, 208 F.2d 70, seems distinguishable, as the Vaz case involved an attempt by a concededly deportable alien to review an order holding him not eligible for suspension of deportation, essentially a discretionary matter, whereas here petitioner seeks a review of the record on which is based a final order of deportation, on the ground that his constitutional rights have been infringed. The District Director, moreover, especially under the new regulations promulgated on December 17, 1952,[2] plainly is the per-

**1.** Podovinnikoff v. Miller, 3 Cir., 1950, 179 F.2d 937; Slavik v. Miller, 3 Cir., 1950, 184 F.2d 575, certiorari denied, 1951, 340 U.S. 955, 71 S.Ct. 566, 95 L.Ed. 688; Paolo v. Garfinkel, 3 Cir., 1952, 200 F. 2d 280; Belizaro v. Zimmerman, 3 Cir., 1952, 200 F.2d 282; Rodriguez v. Landon, 9 Cir., 1954, 212 F.2d 508; Medalha v. Shaughnessy, D.C.S.D.N.Y., 1951, 102 F.Supp. 950; Birns v. Commissioner, D.C.N.D.Ohio, E.D., 1952, 103 F.Supp. 180; Corona v. Landon, D.C.S.D.Cal., C.D., 1953, 111 F.Supp. 191.

**2.** These regulations were made effective after the date of the filing of the com-

plaint in the Vaz case, supra, and read as follows:

"Part 243—Deportation of Aliens in the United States.

Sec. 243.1 Issuance of warrants of deportation; country to which alien shall be deported; cost of detention; care and attention of alien—(a) Issuance. In any case in which an order of deportation becomes final a warrant of deportation shall be issued. District directors shall issue warrants of deportation.

(b) Determination of place and cost of deportation, and necessity for attendants. District directors shall exercise the au-

son to whom has been delegated the power to issue the warrant of deportation and determine the various questions incidental thereto.

The rationale of the cases holding the Commissioner of Immigration and Naturalization or the Attorney General to be an indispensable party in such cases as this boils down to the assertion that the deportee might move to another district and be taken into custody by the District Director there, and the injunction granted in the pending suit would not bar deportation from such other district. In this sense the remedy would be incomplete and there would be no guaranty against circuity of action and delay.

Viewed realistically, however, and with due respect to our brethren of the Third Circuit and others, we think these considerations lack substance. The likelihood of removal to another district seems remote, especially as the principal reason for these numerous proceedings against District Directors, disclosed by the reported cases above referred to, appears to be that the joinder of the Commissioner of Immigration and Naturalization or the Attorney General, whose actual and official residences are in the District of Columbia, would require the venue to be laid in Washington and involve expense which the deportee may be and often is unable to defray. See dictum of Picard, J., in Ragni v. Butterfield, D.C.E.D.Mich., 1953, 115 F.Supp. 953. Doubtless the defense would be conducted by the same or equally competent counsel; the same review of the record by appellate courts would be available; and such further proceedings as might be directed to be had would follow in due course. To require the joinder of the Commissioner of Immigration and Naturalization or the Attorney General under these circumstances would, we think, sacrifice substance to mere form and serve no other purpose than perhaps to deny all relief short of habeas corpus to an indigent alien deportee, whose constitutional rights are just as sacred in the eyes of the law as those of a citizen.

If it shall ultimately be found that petitioner is entitled to injunctive relief against the District Director, we believe such relief, even if not as comprehensive as it could be if the Attorney General had been joined, will not only furnish the protection which petitioner solicits and which will afford him adequate protection, but will follow traditional lines, as our courts have always been zealous to prevent public officials from restraining or threatening to restrain the liberty of citizens and aliens alike, in violation of their constitutional rights. This result seems to us to be in harmony with the reasoning of Williams v. Fanning, 1947, 332 U.S. 490, 68 S.Ct. 188, 92 L.Ed. 95.

The case is remanded to the District Court for further proceedings in accord with this opinion, including consideration of the motions referred to in the opinion below.

Reversed.

thority contained in section 243 of the Immigration and Nationality Act [8 U.S. C.A. § 1253] to designate the country to which, and at whose expense an alien in the United States shall be deported, and to determine when an alien's mental or physical condition requires the employment of a person to accompany the alien.

Sec. 243.2 Finality of decision. No appeal shall lie from the decision of the district director in the exercise of the authority described in Sec. 243.1."