**GONG POY, Plaintiff,**

v.

**Walter A. SAHLI, District Director, Chicago Office, Immigration and Naturalization Service, et al., Defendants.**

No. 54 C 1712.

United States District Court,
N. D. Illinois, E. D.

Nov. 26, 1954.

William Greenhouse, Chicago, Ill., appeared on behalf of the plaintiff.

Robert Tieken, U. S. Dist. Atty., by Leon A. Kupeck, Chicago, Ill., appeared on behalf of the government.

John McWhorter, Chicago, Ill., appeared on behalf of the Immigration and Naturalization Service, defendant.

CAMPBELL, District Judge.

The first, and perhaps determinative issue here cuts at a problem which arises time and again in the federal courts: Is a superior government officer, whose principal office is in the Capitol, an indispensable party to a suit for specific equitable relief brought against a subordinate officer whose office is within this district? A general answer to the problem was supplied by the Supreme Court in Williams v. Fanning, 1947, 332 U.S. 490, 68 S.Ct. 188, 189, 92 L.Ed. 95. After a review of several cases involving such national officers as the Postmaster General, the Secretary of the Interior, and the Commissioner of Internal Revenue, the Court stated:

> "These cases evolved the principle that the superior officer is an indispensable party if the decree granting the relief sought will require him to take action, either by exercising directly a power lodged in him or by having a subordinate exercise it for him."

The Court was not at all disturbed by a suggestion that if the superior officer were not a party, the subordinate "would be left under a command of his superior to do what the court has forbidden." According to the Court, there is but one relevant test: whether or not the decree "will effectively grant the relief desired by expending itself on the subordinate official who is before the court."

The application of this general principle to suits brought against subordinate immigration officers often leads to harsh and inhumane results; and many courts which attempt to apply the principle seem far from satisfied that it rests on sound policy. In the recent case of Pedreiro v. Shaughnessy, 2 Cir., 1954, 213 F.2d 768, 769, this statement appears:

> "The aliens involved in deportation proceedings are often in poor financial circumstances; the validity of final orders of deportation generally, if not always, depends upon questions relating to the alleged infringement of the deportees' constitutional rights; their imprisonment or enlargement on bail and the actual deportation itself affect human relationships of the highest consequence. Under these circumstances it would see that the courts must be able to spell out some simple formula, which will cut through red tape, face realities, and provide an expeditious and inexpensive remedy,

with a minimum amount of procedural frills and a maximum amount of attention to the question of whether or not the administrative proceedings against the deportee have conformed to the requirements of due process."

These facts were presented to the Court in the Pedreiro case: Shaughnessy, the District Director of Immigration and Naturalization for the District of New York, issued a final order of deportation against Pedreiro. Pedreiro then sued Shaughnessy in the District Court under Section 10 of the Administrative Procedure Act, 5 U.S.C.A. § 1009, and asked that the final order be set aside on the ground that he had been denied due process of law during his deportation hearing. Pedreiro failed to join either the Attorney General or the Commissioner of Immigration and Naturalization as parties defendant. On these facts, the Court of Appeals decided that to require joinder of Shaughnessy's superiors would be to "sacrifice substance to mere form". Under current regulations, it is the District Director, not the Commissioner, who issues orders and warrants for deportation, and, unless the deportee leaves the district in which he has filed suit, an unlikely occurrence, the District Court might grant effective relief by serving its orders upon the local District Director. The Pedreiro decision is therefore completely consistent with the language of Williams v. Fanning, which I referred to earlier, because any decree issued in Pedreiro's behalf would, in the language of the Williams case, "effectively grant the relief desired by expending itself on the subordinate official who is before the court."

It should be noted, however, that the Pedreiro case contains its own limitation: the Court carefully distinguished another case, which it decided just one year earlier, wherein it was held, on another set of facts, by the same Court, that the Attorney General and the Commissioner of Immigration were indispensable parties. That was the case of De Pinho Vaz v. Shaughnessy, 2 Cir., also, and reported in 208 F.2d 70. That was decided in 1953. The plaintiff was a deportable alien who claimed that he had been denied an opportunity to present evidence as to his eligibility for suspension of deportation. The Court decided that the claim could not be entertained unless the Commissioner of Immigration and the Attorney General were made parties. The reason for that decision is apparent. Unlike the Pedreiro case, wherein final decisions rested with the District Director, the De Pinho Vaz case raised some matters which were within the discretion of the Attorney General, such as suspension of a final order of deportation. In the latter case, a decree directed only to the District Director could not provide the relief sought in the complaint.

█ In the instant case, a final order demanding the plaintiff's departure from this country was issued by the District Director of Immigration and Naturalization at San Francisco, California; although that District Director is named a party defendant in this case, he has not been served with process, and, of course, is outside the territorial jurisdiction of this court. Therefore, even if the complaint in this case were similar to the one in Pedreiro v. Shaughnessy, which it is not, a decree granting the relief sought would be ineffective. However, if I were to follow the Pedreiro decision, this would be governed by the distinction stated in the Pedreiro opinion itself: this plaintiff asks for at least one type of relief that could be granted only by the Attorney General, that is, that he be considered for deportation rather than exclusion, and that his deportation then be suspended. I am therefore compelled to conclude that both the Attorney General and the District Director at San Francisco are indispensable parties to this suit, and, for that reason, the Government's motion to dismiss the complaint must be granted.

I wish to make it clear that I have not indicated complete acceptance of

the Pedreiro opinion. I am aware of the sharp cleavage between the Second Circuit on the one hand, and the Third and the Ninth Circuits on the other. See, for example, the case of Paolo v. Garfinkel, in the Third Circuit, reported at 200 F.2d 280, decided in 1952, and the case of Rodriguez v. Landon, in the Ninth Circuit, reported at 212 F.2d at 508, decided in 1954. I chose the Pedreiro case as a basis for discussion merely because it contains the most liberal jurisdictional requirements of any of the cases reported; and, as I have illustrated, even that case provides no help at all for the plaintiff in the case at bar.

I also wish to make it clear that I do not expressly hold that this suit is properly brought under the Declaratory Judgment Act, 28 U.S.C.A. §§ 2201, 2202, or that this suit might have been brought under the Administrative Procedure Act. Here too, there is a difference among the Circuits. Compare, for example, Rubinstein v. Brownell, 1953, 92 U.S.App.D.C. 328, 206 F.2d 449, with the case of Batista v. Nicolls, 1 Cir., 1954, 213 F.2d 20. I merely decide that even if this suit could have been brought under either of those two Acts, either the Declaratory Judgment Act or the Administrative Procedure Act as the amended complaint now brings in, the plaintiff has failed to join at least two indispensable parties. And I might state in passing that today's decision, along with several of the decisions I have cited, should be disconcerting to those who argue that the application of the Administrative Procedure Act will in itself provide some help to distressed aliens: it is clear that many jurisdictional rules must be rewritten before prospective deportees may sue for relief in a convenient forum. And it is on this key point that I find myself in disagreement with the Court of Appeals for the Second Circuit, which believes, to use the words of Justice Medina, in the Pedreiro opinion [213 F.2d 769], that "the courts must be able to spell out some simple formula, which will cut

through red tape". I should like to cut through red tape, in this case as in all others, but I am bound both by judicial precedent and by legislation. If any "simple formula," like the one suggested by the Court of Appeals for the Second Circuit, is to be devised to avoid harsh and inhumane results in these immigration cases, it must, in my opinion, be devised by Congress, and not by the courts.