Ricky Martin Lloyd WALTERS,
Petitioner,

v.

John ASHCROFT, Attorney General
of the United States, et al.,
Respondents.

No. 02–CIV–9577 (KMW).

United States District Court,
S.D. New York.

Nov. 3, 2003.

Alex Solomiany, Miami, FL, for Petitioner.

Michael M. Krauss, New York City, for Respondents.

OPINION & ORDER

KIMBA M. WOOD, District Judge.

Ricky Martin Lloyd Walters ("Petitioner") seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, to vacate a final order of deportation entered by the Board of Immigration Appeals ("BIA") on March 26, 1997, and to reinstate a November 7, 1995 order of the BIA granting Petitioner relief from deportation under former section 212(c) of the Immigration and Nationality Act ("INA") (8 U.S.C. § 1182(c)) (repealed 1996).[1] Petitioner raises constitutional and statutory challenges to the March 26, 1997 BIA decision, which (1) granted a motion to reconsider filed by the INS, (2) vacated the November 7, 1995 BIA decision, and (3) ordered Petitioner deported. Respondents argue that the Court lacks personal jurisdiction over all Respondents, and that the petition is meritless. For the reasons set forth below, the Court finds that it has personal jurisdiction over Respondent John Ashcroft, and that Petitioner was denied due process by the BIA's March 26, 1997 order granting the INS' motion to reconsider and vacating the BIA's prior decision without proper authority. Petitioner's application for a writ of habeas corpus is granted.

## I. Background

Petitioner is a citizen of the United Kingdom.[2] He was admitted to the United States as a lawful permanent resident ("LPR") on April 16, 1976. On March 22, 1991, in the Supreme Court of the State of New York, Petitioner pled guilty to, and was convicted of, two counts of attempted murder in the second degree and eight counts involving firearms violations. Petitioner was sentenced to an indeterminate term of imprisonment with a maximum term of ten years imprisonment and a minimum term of three and one-third years imprisonment. On November 29, 1993, the Immigration and Naturalization Service ("INS") issued an Order to Show Cause and Notice of Hearing, charging Petitioner with deportability for having been convicted of a firearms offense, INA § 241(a)(2)(C), and an aggravated felony (crime of violence), INA § 241(a)(2)(A)(iii). Petitioner's removal hearing took place in New York before Immigration Judge Alan Vomacka ("IJ") on five dates between March 1 and June 19, 1995.

Petitioner contested deportability before the IJ, but was found deportable on the basis of having been convicted of (1) at least one firearms offense, and (2) an aggravated felony. *See* June 19, 1995 Oral Decision of the Immigration Judge ("IJ Decision") at 3 (Return at 142). Petitioner applied for two forms of discretionary relief from deportation: a waiver pursuant to § 212(c) and a waiver pursuant to § 212(h). In order to be statutorily eligible for § 212(c) relief, an alien must dem-

---

**1.** Although INA § 212(c) was repealed by Congress in 1996, the Supreme Court has held that § 212(c) remains available to aliens who, like Petitioner, pled guilty to aggravated felonies prior to September 30, 1996. *See INS v. St. Cyr*, 533 U.S. 289, 326, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001).

**2.** Any fact noted without specific citation is undisputed and has been drawn from Petitioner's Petition for Writ of Habeas Corpus and Incorporated Memorandum of Law, filed December 2, 2003, and Respondents' Memorandum of Law in Opposition to Petition for Writ of Habeas Corpus, filed March 12, 2003.

onstrate that he (1) is a lawful permanent resident of the United States, (2) has maintained an unrelinquished domicile in the United States of seven consecutive years, and (3) has not served a term of five years in prison.[3] On June 19, 1995, the IJ found Petitioner eligible for,[4] and deserving of, relief under INA § 212(c), and identified "unusual and outstanding equities ..." in Petitioner's case. *See* IJ Decision at 28 (Return at 167).[5] The IJ granted Petitioner a waiver of excludability along with adjustment of status, allowing Petitioner to retain his status as a lawful permanent resident until such time as a final order of deportation was entered against him. The INS filed a timely appeal of the IJ's decision, and argued to the BIA that the IJ erred in finding Petitioner deserving of discretionary relief under § 212(c). The INS did not at that time argue that Petitioner was not eligible for relief, because it remained undisputed that Petitioner had been eligible at the time that the IJ made his decision. Sometime after the parties submitted briefing to the BIA, and certainly by the time the BIA ruled on the INS appeal, Petitioner had served five years in prison.[6] Addressing the sole

question before it on appeal (that is, the question of whether Petitioner was deserving of § 212(c) relief), the BIA dismissed the INS appeal on November 7, 1995, finding that "the granting of section 212(c) relief appears to be in the best interest of the country." *See* November 7, 1995 BIA Decision at 9 (Return at 60).

On December 8, 1995, the INS filed with the BIA a Motion to Reopen Deportation Proceedings and to Reconsider. The INS argued in the motion that the BIA "should have denied the respondent's request for § 212(c) relief because he was not statutorily eligible for § 212(c) relief by the date of the Board's decision in that he had served a term of imprisonment of at least 5 years." *See* Government's Motion to Reopen Deportation Proceedings and to Reconsider, ("INS Motion to Reconsider") at ¶ 8 (Return at 41). In support of this argument, the INS attached a letter that INS Trial Attorney Suzanne McGregor received on October 23, 1995. *Id.* at ¶ 6 (Return at 41–42). The letter was sent by John R. O'Keefe, Superintendent of Gouverneur Correctional Facility in Gouvern-

---

3. Although § 212(c) was drafted as a waiver of grounds of excludability for a returning alien, courts have consistently interpreted it to apply equally to those who have not yet departed from the country and are charged with deportable offenses. *See Francis v. INS,* 532 F.2d 268 (2d Cir.1976); *Matter of Silva,* 16 I. & N. Dec. 26, 30, 1976 WL 32326 (BIA 1976).

4. At that point, it is undisputed that Petitioner had not yet served five years in prison.

5. The IJ also found Petitioner eligible for, and deserving of, relief under INA § 212(h). *See* IJ Decision at 30 (Return at 169). The Court notes that Petitioner is no longer eligible for relief under the current version of § 212(h), which bars LPRs convicted of aggravated felonies from obtaining such relief. 8 U.S.C. § 1182(h). This restriction became law as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRI-

RA"), which had an effective date of September 30, 1996. Although Petitioner applied for § 212(h) relief prior to the effective date of IIRIRA, Petitioner's removal proceedings were ongoing until March 26, 1997. Petitioner is therefore subject to the limitations placed on § 212(h) relief by IIRIRA. *Matter of Yeung,* 21 I. & N. Dec. 610, 613–14 (BIA 1997) (holding that the restrictions on § 212(h) eligibility enacted in IIRIRA apply retroactively to LPRs who were still in removal proceedings at the time of the effective date of IIRIRA.)

6. Whether Petitioner's time in prison stopped counting for purposes of his 212(c) eligibility is one question before the Court. But it is not disputed as a factual matter that Petitioner had been physically in prison for five years by the time the BIA ruled on November 7, 1995.

eur, New York, and stated, *inter alia:* "We are in receipt of your request dated October 13, 1995 regarding the above-noted individual who is presently in our custody." *See* Letter to INS Trial Attorney Suzanne McGregor, dated October 19, 1995 (Return at 43). Superintendent O'Keefe informed Ms. McGregor that as of the date of his letter, October 19, 1995, Petitioner had served 5 years, 14 days in prison. *Id.* Although it was received two weeks before the BIA ruled, the government concedes that it did not present this evidence of Petitioner's time spent in prison to the BIA's attention prior to the November 7 ruling.

On March 26, 1997, the BIA issued a decision granting the INS Motion to Reconsider and vacating the BIA's November 7, 1995 decision. The BIA held that "as of October 19, 1995, the respondent had served a total of 5 years, 14 days in prison, and therefore was ineligible for a section 212(c) waiver." *See* March 26, 1997 BIA Decision (Return at 6).[7]

On April 25, 1997, Petitioner filed, in the United States Court of Appeals for the Second Circuit, a petition for review of the March 26, 1997 BIA decision. On June 12, 1998, the Second Circuit dismissed the petition for lack of jurisdiction, finding that "[b]ecause Walters was found deportable based on aggravated felony and firearms convictions," the court was barred from reviewing his final order of removal. *Walters v. INS*, 159 F.3d 1349 (table), 1998 WL 537197 (2d Cir. June 12, 1998) (unpub-

lished). It appears that sometime thereafter, Petitioner departed the country.

On June 1, 2002, INS officers in Bradenton, Florida detained Petitioner when he attempted to re-enter the country. The INS again served Petitioner with an Order to Show Cause and Notice to Appear, charging him with being inadmissible for (1) his prior crimes, and (2) his post-removal re-entry. On July 12, 2002, an IJ in Florida found Petitioner inadmissible on both grounds and ineligible for any form of relief, and ordered that he be removed to the United Kingdom. Petitioner appealed the IJ's decision to the BIA. Before the BIA ruled on that appeal, Petitioner filed a petition for habeas corpus in the Middle District of Florida on August 13, 2002. This petition was denied on September 10, 2002 because the Petitioner had not yet exhausted his administrative remedies.[8] On November 25, 2002, the BIA summarily affirmed the IJ's decision. On December 3, 2002, Petitioner filed a petition for review in the United States Court of Appeals for the Eleventh Circuit. The Eleventh Circuit dismissed the petition for lack of jurisdiction on January 30, 2003.

The instant petition and motion for a stay of removal were filed with this Court on December 2, 2002. On December 27, 2002, this Court granted a stay of removal. The Court now addresses the merits of the petition.

## II. Personal Jurisdiction

▌ The Court must decide, as a threshold matter, whether it has personal

---

7. As discussed above, the BIA also found the Petitioner ineligible for § 212(h) relief, an issue it had chosen not to reach in its November 7, 1995 decision. *See* November 7, 1995 BIA Decision at 10 (Return at 61).

8. The district court's decision is somewhat confusing, in that it appears to construe Petitioner's claim as one challenging the lawful-

ness of his continued detention, rather than the lawfulness of his original order of deportation. *See* Petitioner's Response to Respondents' Memorandum of Law in Opposition to Petition for Habeas Corpus ("Petitioner's Response"), filed March 11, 2003, Exhibit A at 2–3 (citing *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001)).

jurisdiction over the Respondents. 28 U.S.C. § 2243 states that "the writ ... shall be directed to the person having custody of the person detained." The government argues that the only proper respondent in this case is the INS Miami District Director, due to the fact that the Petitioner is currently detained in Bradenton, Florida, where his most recent removal hearings were held. Because this Court would apparently not have personal jurisdiction over the Miami District Director, the Respondents argue that the petition must be dismissed. Petitioner argues, however, that Attorney General John Ashcroft is a proper respondent in a habeas petition brought by an alien challenging a final order of removal.

The Court notes that the Supreme Court and the Second Circuit have both reserved judgment on this precise question.[9] *See Ahrens v. Clark,* 335 U.S. 188, 193, 68 S.Ct. 1443, 92 L.Ed. 1898 (1948) (stating "we do not reach the question whether the Attorney General is the proper respondent"); *Henderson v. INS,* 157 F.3d 106, 130 (2d Cir.1998) ("We decline at this time to resolve the issue of whether the Attorney General is a proper respondent for habeas actions brought by aliens facing deportation."). The circuit courts that have addressed this issue have split. Two circuits have held that although courts should generally apply the "immediate custodian" rule and assert habeas jurisdiction only over the person who exercises "day-to-day control" over the detainee, "extraordinary circumstances" may justify exceptions to the immediate custodian rule. *See Vasquez v. Reno,* 233 F.3d 688, 696 (1st Cir.2000) (suggesting that extraordinary circumstances might include a situation in which the location of the detainee is undisclosed, or where the INS has "spirited an alien from one site to another in an attempt to manipulate jurisdiction."); *Roman v. Ashcroft,* 340 F.3d 314, 325–26 (6th Cir.2003) (same). However, the Ninth Circuit recently held that strictly adhering to the immediate custodian rule "does not make sense in the immigration context[,]" and that "the most appropriate respondent to petitions brought by immigration detainees is the individual in charge of the national government agency under whose auspices the alien is detained." *Armentero v. INS,* 340 F.3d 1058, 1071 (9th Cir.2003).

The courts of the Southern District of New York and the Eastern District of New York are similarly divided with respect to this issue. *Compare Torres–Nevas v. Ashcroft,* No. 02CV1745, 2003 WL 21143067, at *2 (E.D.N.Y. Apr.27, 2003) (Johnson, J.) (Attorney General is proper respondent); *Small v. Ashcroft,* 209 F.Supp.2d 294, 296 (S.D.N.Y.2002) (Rakoff, J.) (same); *Cinquemani v. Ashcroft,* No. 00–CV–1460, 2001 WL 939664, at *3 (E.D.N.Y. Aug.16, 2001) (Dearie, J.) (same); *Arias–Agramonte v. Commissioner of INS,* No. 00 CIV. 2412, 2000 WL 1617999, at *4–9 (S.D.N.Y. Oct. 30, 2000) (Sweet, J.) (same); *Alcaide–Zelaya v. McElroy,* Nos. 99Civ.5102, 99Civ.9999, 2000 WL 1616981, at *3–5 (S.D.N.Y. Oct. 27, 2000) (Chin, J.) (same); *Pena–Rosario*

---

**9.** The Government cites *Pedreiro v. Shaughnessy,* 213 F.2d 768 (2d Cir.1954), for the proposition that the INS District Director is the only proper respondent in a habeas petition. However, *Pedreiro* simply holds that the Attorney General is not an *indispensable* party for purposes of a motion to dismiss for failure to name an indispensable party. *See Pedreiro,* 213 F.2d at 770. The case says nothing about whether the Attorney General may be a *proper* respondent. In fact, although the Second Circuit holds that the Attorney General is not an indispensable party, the court goes on to say that since aliens may be moved outside of the jurisdiction of District Directors, the injunctive relief available in the case might not be "as comprehensive as it could be if the Attorney General had been joined." *Id.*

*v. Reno,* 83 F.Supp.2d 349, 362 (E.D.N.Y. 2000) (Gleeson, J.) (same); *Pottinger v. Reno,* 51 F.Supp.2d 349, 357 (E.D.N.Y. 1999) (Weinstein, J.) (same); *Nwankwo v. Reno,* 828 F.Supp. 171, 176 (E.D.N.Y.1993) (Korman, J.) (same) *with Belvett v. Ashcroft,* No. 00 Civ. 2463, 2002 WL 287839, at *1 (S.D.N.Y. Feb. 27, 2002) (McKenna, J.) (Attorney General is not a proper respondent); *Guerrero–Musla v. Reno,* No. 98 Civ. 2779, 1998 WL 273038, at *2 (S.D.N.Y. May 28, 1998) (Baer, J.) (same); *Wang v. Reno,* 862 F.Supp. 801, 812–13 (E.D.N.Y. 1994) (Sifton, J.) (same); *Peon v. Thornburgh,* 765 F.Supp. 155, 156 (S.D.N.Y.1991) (Stanton, J.) (same).

The question of whether a court has personal jurisdiction over the Attorney General, when the Attorney General is named in § 2241 petitions, comes down to whether the Attorney General is a custodian for these purposes. This question concerns the relationship between the Attorney General and the aliens over whose circumstances the Attorney General has been delegated virtually total control. *See Henderson,* 157 F.3d at 125–26. The Court is persuaded that the Attorney General is a custodian of all aliens seeking review of final orders of removal, given the need for a flexible, practical approach to determining the proper custodian for habeas petitions, *see id.* at 124, and the "unique role" that the Attorney General plays in matters involving aliens. *Id.* at 125–26 (reviewing the many powers granted to the Attorney General with respect to aliens including, but not limited to, the authority to detain and produce aliens, to order aliens deported, to grant or deny discretionary relief from deportation, and to

temporarily parole aliens into the country for humanitarian or other reasons). Indeed, the Attorney General is designated by statute to be the proper respondent in petitions for review brought by aliens challenging their orders of deportation, *see* 8 U.S.C. § 1252(b)(3)(A), and commonly concedes personal jurisdiction in habeas petitions such as this one. *See Henderson,* 157 F.3d at 126 n. 21.[10] The Court is guided by the reasoning of two decisions in particular, *Alcaide–Zelaya v. McElroy* and *Arias–Agramonte v. Commissioner of INS.*

In adopting this reasoning, the Court rejects the approach taken by those courts that find the Attorney General to be the appropriate custodian only where there exist "extraordinary circumstances." Adoption of that test would sow confusion in habeas cases, and serves no practical purpose. No rationale has been offered for holding that the Attorney General's custodial relationship with aliens challenging final orders of removal hinges upon such facts as how often an alien is transferred from one detention center to another, or whether there are so many aliens seeking habeas corpus relief in one district that habeas review is no longer available within a reasonable amount of time. *See Nwankwo v. Reno,* 828 F.Supp. 171, 174 (E.D.N.Y.1993) (referring to the immense backlog in habeas petitions found in the Western District of Louisiana, which prevents the Western District of Louisiana from handling habeas petitions filed by detained aliens in a timely manner).

 The Court also concludes that the proper venue for this petition is the

---

**10.** *See also* Rachel E. Rosenblum, *Is the Attorney General the Custodian of an INS Detainee? Personal Jurisdiction and the "Immediate Custodian" Rule in Immigration–Related Habeas Actions,* 27 N.Y.U. Rev. L. & Soc. Change 543, 577 (2002) (noting that when petitioners who name the Attorney General as a respondent file their 2241 petitions in the district of confinement, thereby neutralizing concerns about the proper forum, the government has not challenged the court's jurisdiction over the Attorney General).

Southern District of New York. Traditional principles of venue apply in habeas petitions. *See Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 500, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973). The three factors to be considered in determining venue are (1) "where all the material events took place"; (2) where "the records and witnesses pertinent to petitioner's claim are likely to be found"; and (3) the relative convenience of the forum for the parties. *Henderson,* 157 F.3d at 127 n. 25 (*quoting Braden,* 410 U.S. at 493–94, 93 S.Ct. 1123). In the present case, the crimes for which Petitioner was ordered deported were committed in New York, and he served his sentence in New York. Petitioner's first set of deportation proceedings were conducted here, including the proceeding in which the IJ decided to grant Petitioner a § 212(c) waiver and adjustment of status. Following his incarceration, Petitioner was paroled by the New York Department of Corrections, and reported to a parole officer in the Southern District of New York. *See* Petitioner's Response at 4. Although Petitioner is presently detained in Florida, the nature of his challenge to the most recent order of removal is based on the propriety of his original order of removal. Given Petitioner's choice of forum, and the fact that Respondents never claim, or plausibly could claim, that New York is an inconvenient location for the Attorney General, the Court finds venue in the Southern District of New York to be appropriate.[11]

### III. Subject Matter Jurisdiction

■ Habeas corpus jurisdiction, pursuant to 28 U.S.C. § 2241, extends to final orders of deportation, despite the substantial changes in immigration law enacted in 1996. *See INS v. St. Cyr,* 533 U.S. 289, 314, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (holding that "habeas jurisdiction under § 2241 was not repealed by [the Antiterrorism and Effective Death Penalty Act of 1996] and IIRIRA."); *Jean–Baptiste v. Reno,* 144 F.3d 212, 220 (2d Cir.1998) (same).

■ Section 2241 grants courts power over prisoners "in custody in violation of the Constitution or laws or treaties of the United States...." The scope of review does not extend to "review of discretionary determinations by the IJ and the BIA." *Sol v. INS,* 274 F.3d 648, 651 (2d Cir.2001). Insofar as Petitioner asks the Court to decide whether the BIA abused its decision when it granted the INS' Motion to Reconsider, this Court has no jurisdiction to consider such a claim. *See* 8 C.F.R. § 3.2(a) (1997) ("The decision to grant or deny a motion to reopen or reconsider is within the discretion of the Board...."). This Court retains jurisdiction over only "purely legal statutory and constitutional claims." *See Sol,* 274 F.3d at 651 (citing *Calcano–Martinez v. INS,* 232 F.3d 328, 342 (2d Cir.2000), aff'd 533 U.S. 348, 121 S.Ct. 2268, 150 L.Ed.2d 392 (2001)).

### IV. Discussion

Petitioner raises two cognizable claims for habeas corpus relief. First, Petitioner argues that the BIA, in granting the motion to reconsider based upon "new evidence" that he was statutorily ineligible,

---

11. The Court agrees with the Second Circuit that strict application of the venue doctrine should suffice to constrain any forum shopping on the part of aliens who choose to name the Attorney General. *See Henderson,* 157 F.3d at 127–28. Absent recognition of the Attorney General as a proper respondent, however, the government could determine the forum by directing that the alien be detained in a particular facility. *See Alcaide–Zelaya,* 2000 WL 1616981, at *5 ("It is, after all, the government that directs where an alien is detained.").

denied him due process. Second, Petitioner argues that § 212(c)'s five year incarceration bar to eligibility for § 212(c) applies only where the Petitioner has served five years in prison by the time the IJ determines eligibility.

■ It is well-settled that "the liberty of an individual is at stake" when the government seeks to deport an alien. *Bridges v. Wixon*, 326 U.S. 135, 154, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945). *See Ng Fung Ho v. White*, 259 U.S. 276, 284, 42 S.Ct. 492, 66 L.Ed. 938 (1922) (deportation can strip one "of all that makes life worth living."). Because of this, "the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *See Reno v. Flores*, 507 U.S. 292, 307, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) (*citing The Japanese Immigrant Case*, 189 U.S. 86, 100–01, 23 S.Ct. 611, 47 L.Ed. 721 (1903)). Aliens are entitled to a "full and fair hearing" that accords with the principles of due process. *See Michel v. INS*, 206 F.3d 253, 259 (2d Cir.2000); *Bridges*, 326 U.S. at 154, 65 S.Ct. 1443 ("Meticulous care must be exercised lest the procedures by which [an alien] is deprived of that liberty not meet the essential standards of fairness.").

■ Petitioner argues that his right to procedural due process was violated when the BIA granted the INS Motion to Reconsider on March 26, 1997. Petitioner argues that the BIA cannot grant a motion to *reconsider* based on "new" evidence, particularly when that same evidence was in the hands of the INS Trial Attorney two weeks before the original BIA decision and would therefore not even be proper grounds for a motion to reopen. In this case, the claimed "new" evidence was a letter that was received by the INS Trial Attorney two weeks before the November 7, 1995 BIA ruling; the letter informed the INS that the Petitioner had spent 5 years, 14 days in prison as of October 19, 1995. The BIA accepted the "new" evidence without having given Petitioner an opportunity to argue its inadmissibility, and then moved on to what it assumed to be the only outstanding issue–the issue of whether the time spent in prison is ever tolled for purposes of determining eligibility for 212(c) relief; the BIA asked the parties to brief that issue. *See* BIA Letter Requesting Briefing, dated February 14, 1996 (Return at 37–38). Petitioner argues that when the BIA considered the "new" evidence in ordering briefing on the five year issue, this resulted in a fundamentally unfair hearing on the INS Motion to Reconsider in that it afforded the INS a second bite at the apple, denied Petitioner finality, and provided him with no meaningful opportunity to respond.[12]

Petitioner's argument has merit. Although the March 26, 1997 BIA decision does not refer specifically to the letter included in the INS Motion to Reconsider, there is no question that the BIA decision relies entirely upon the information contained in the letter. *Compare* March 26, 1997 BIA decision (stating "as of October 19, 1995, the respondent had served a total of 5 years, 14 days in prison, and therefore was ineligible for a section 212(c) waiver.") *with* INS Motion to Reconsider (stating that as of October 19, 1995, the "Total Time Served" was "5 years, 14 days"). There is no reason to believe that, had the BIA not considered that evidence, the BIA would have changed its original decision,

---

**12.** Alternatively, Petitioner may be understood as arguing that the failure of the INS to present the letter to the BIA before the November 7, 1995 ruling denied the Petitioner a fair hearing before the BIA initially. This argument would be without merit because the Petitioner had a full and fair hearing before the BIA and was, in fact, granted § 212(c) relief on November 7, 1995.

particularly because it had just found, in agreement with the IJ, that the granting of relief was "in the best interest of the country." *See* November 7, 1995 BIA Decision at 9 (Return at 60).

■ Although it is true that the BIA has discretion over whether or not to grant a motion to reconsider, that discretion is "subject to the restrictions" set forth in regulations. 8 C.F.R. § 3.2(a). A motion to reconsider can be based only on "errors of fact or law in the prior Board decision." 8 C.F.R. § 3.2(b)(1). The BIA cannot consider new facts through a motion to reconsider; upon a motion to reconsider, the factual record is the original record at the time the original decision was rendered. *See Zhao v. U.S. DOJ*, 265 F.3d 83, 91 (2d Cir.2001) ("a motion for reconsideration asks the Board to reevaluate its decision on the existing factual record") (citing *Matter of Cerna*, 20 I. & N. Dec. 399, 402, 1991 WL 353528 (BIA 1991)); *Iturribarria v. INS*, 321 F.3d 889, 895 (9th Cir.2003) ("It is implicit in [the regulation governing motions to reconsider] that the BIA will reconsider the party's case using the same record evidence used in making its prior decision.").

The Court finds that the BIA's consideration of the "new" evidence contained in the letter, which the INS had failed to offer in a timely fashion, violated the restrictions placed by regulation on the BIA's authority to grant motions to reconsider. Just as an alien must present his case in full before the BIA for its review, the INS must be expected to do so. *See Matter of Guevara*, 20 I. & N. Dec. 238, 249, 1990 WL 385763 (BIA 1991) (denying an INS motion to reconsider based on new evidence, because the INS consciously chose not to offer the new evidence when it first became available). The BIA is not permitted to admit new evidence in connection with a motion to reconsider. When the INS fails present all available evidence to the BIA for inclusion in the record on review, the BIA must abide by regulations and disregard new evidence from being considered in a motion to reconsider.

■ Respondents argue that because briefing was complete before the INS received the letter, the INS followed the proper course in presenting the letter through a motion to reconsider. Respondents are incorrect. A motion to reconsider can never be the appropriate course for introducing new evidence into the record. The only vehicle for introducing *new* evidence post-decision is a motion to reopen. *See* 8 C.F.R. § 3.2(c)(1). To admit new evidence through a motion to reopen, the BIA must be satisfied that the "new facts" were "unavailable or could not have been discovered or presented at the former hearing." *Id.* The INS concedes that the letter was available to the INS Trial Attorney two weeks before the original decision. The fact that briefing was complete at the time the INS obtained the letter does not render the letter "unavailable" to the INS at the time of the original BIA decision. The INS had the option of sending the letter to the BIA to be added to the record.[13] Had it done so, the BIA could have

---

**13.** Although it is true that aliens bear the burden of demonstrating eligibility for discretionary relief, the INS did not challenge Petitioner's eligibility on appeal, and therefore conceded eligibility at the time the BIA considered the matter on November 7, 1995. When the INS learned on October 23, 1995, that Petitioner's eligibility was now an appropriate issue for the BIA to consider, the burden was on the INS, not the Petitioner, to notify the BIA that it wished to contest Petitioner's eligibility. The government has never explained why it did not seek to supplement the record when it first received the letter. Furthermore, the Court notes that absent evidence to the contrary, the BIA could not have

added the letter to the record and either decided the case itself on the basis of the facts then before it, *see Matter of S–H–*, 23 I. & N. Dec. 462, 463–64, 2002 WL 31173153 (BIA 2002), or the BIA could have treated the INS submission as a motion to reopen/remand to the IJ and directed the IJ to reconsider Petitioner's eligibility. *See* 8 C.F.R. § 3.2(c)(4).

It would be fundamentally unfair for either party to be able to add new facts to the record on a motion to reconsider, especially when those facts were available to the INS prior to the original BIA decision, and would not therefore even be admissible through a motion to reopen. Because the BIA supplemented the record in violation of 8 C.F.R. § 3.2(b)(1), and in violation of fundamental fairness, the Court holds that Petitioner was denied a hearing on the Motion to Reconsider that comported with due process and the principles of fundamental fairness.

■ It is unclear whether Petitioner must show prejudice in order to prevail. In the immigration context, the Second Circuit requires a showing of prejudice in ineffective assistance of counsel claims founded in the Fifth Amendment Due Process Clause, *see Iavorski v. U.S. INS*, 232 F.3d 124, 128–29 (2d Cir.2000), as well as in collateral challenges to a deportation order presented in a criminal action, *see United States v. Fernandez–Antonia*, 278 F.3d 150, 157 (2d Cir.2002). However,

when a regulation that implicates important constitutional or statutory rights is violated, prejudice need not be shown. *See Waldron v. INS*, 17 F.3d 511, 518 (2d Cir.1994) (holding that prejudice need be shown only when the regulation in question does not implicate fundamental rights). *See also Chong v. District Director, INS*, 264 F.3d 378, 389–91 (3d Cir. 2001) (applying *Waldron* prejudice test to an alien's petition for habeas corpus); *Kasperek v. Ashcroft*, No. 02 Civ. 0302, 2002 WL 31869383, at *2 (S.D.N.Y. Dec. 23, 2002) (same). In this case, where the violation of the regulation implicates fundamental due process rights, the Court holds that prejudice need not be demonstrated.[14]

■ However, the Court finds, in the alternative, that the Petitioner has demonstrated such prejudice. In the context of a collateral challenge to a deportation order in a criminal case, "[i]n order to show prejudice, [an alien] must show that, absent the procedural errors, he would not have been removed." *U.S. v. Fernandez–Antonia*, 278 F.3d 150, 159 (2d Cir.2002). On the basis of the March 26, 1997 BIA decision itself granting the motion to reconsider and vacating its November 7, 1995 decision, there can be little question that but for the BIA's procedural error in reopening the record, the Petitioner would not have been ordered removed.

assumed that Petitioner had served five years in prison by the time of its original decision.

**14.** The court in *Waldron* expressed a concern that requiring remand in every situation where the INS violated a regulation would place "an unwarranted and potentially unworkable burden on the agency's adjudication of immigration cases." *See Waldron*, 17 F.3d at 518. It was for this reason that the court required a showing of prejudice only when the violation of the regulation did not implicate a fundamental right. In this case, be-

cause the violation in question involves the decision of the BIA to wrongfully vacate its earlier decision, no "unwarranted and unworkable burden" need be placed on the BIA through remand in any case. Petitioner's case had already been fully heard by the BIA; but for the wrongful grant of the INS Motion to Reconsider, the BIA's November 7, 1995 decision would have become final. Because of this, the Court finds that it need not remand the case to the BIA for any additional proceedings.

Because the Court finds that Petitioner was denied due process when the BIA granted the INS Motion to Reconsider and vacated its original decision, the Court finds that the original BIA decision should be reinstated and Petitioner's second claim need not be decided.

## V. Conclusion

For the reasons set forth above, the Court hereby grants the petition for writ of habeas corpus. In the interests of finality, and because the BIA has already fully considered, and granted, Petitioner's application for § 212(c) relief and adjustment of status in its November 7, 1995 ruling, the Court hereby vacates the March 26, 1997 BIA ruling and reinstates the BIA's earlier ruling.

SO ORDERED