Samuel Anthony SMALL, Petitioner,

v.

John ASHCROFT, as Attorney General of the United States; James Ziglar, as Commissioner of the Immigration and Naturalization Service; Edward McElroy, District Director, Immigration and Naturalization Service, New York District; Christine G. Davis, New Orleans District Director, Immigration and Naturalization Service; and the Immigration and Naturalization Service, Respondents.

No. 01 CIV.11625(JSR).

United States District Court,
S.D. New York.

July 5, 2002.

As Corrected July 9, 2002.

David Stern, Legal Aid Society, Immigration Unit, Brooklyn, NY, for Plaintiff.

F. James Loprest, Jr., Sp. Asst. U.S. Atty., U.S. Atty. Office, New York, NY, for Defendant.

## MEMORANDUM ORDER

RAKOFF, District Judge.

This case came before the Court on a habeas corpus petition as petitioner Small was about to be deported to Jamaica, where he last resided 31 years ago. After granting an emergency stay of deportation, the Court received substantial written submissions and oral arguments from able counsel for the respective parties, regarding petitioner's objections to his deportation. Upon review of those submissions, the Court, by Order dated June 27, 2002, (a) rejected respondents' jurisdic-

tional challenges to the petition; (b) rejected petitioner's due process and equal protection objections to his deportation; (c) agreed with petitioner that the Board of Immigration Appeals ("BIA") erred in denying petitioner the opportunity to apply for a discretionary waiver of the order for his deportation; (d) remanded the case to the BIA so that petitioner can be heard on his application for such a waiver; and (e) extended the stay of petitioner's deportation pending further order of this Court. This Memorandum Order will state the reasons for these rulings.

Petitioner Small was admitted to the United States as a lawful permanent resident in 1970 and has resided here since. His mother, sister, brother, and two minor children are all United States citizens. Mr. Small, however, proved less than a model resident, and was eventually convicted of two New York state crimes: possession of stolen property in the fifth degree, to which he pled guilty on May 5, 1982, and robbery in the second degree, of which he was convicted after trial on October 2, 1985 and for which he served more than five years in prison.[1] In 1989, the Immigration and Naturalization Service ("INS") sought to deport Small to Jamaica, pursuant to § 241(a)(4)(A) of the Immigration and Naturalization Act of 1952 ("INA"), 8 U.S.C. § 1251(a)(4)(A), for having been convicted of the foregoing two crimes. There followed ten years of removal proceedings before seven different immigration law judges, during which time the proceedings were closed and re-opened four times. Ultimately, however, in 1999, Small was ordered deported.

Small timely appealed that decision to the BIA, on the ground that he had been denied due process and equal protection in connection with the deportation proceed-

---

1. According to his counsel, Mr. Small was also convicted in 1982 of burglary. *See* Petitioner's Revised Supplemental Brief dated 2/13/02 ("Pet.Br.") at 2.

ings and on the further ground that he had been improperly denied the right to apply for a discretionary waiver of his deportation under former § 212(c) of the INA. In a decision issued October 11, 2001, the BIA dismissed the appeal. Although the deportation proceedings had occurred in New York and petitioner had been held in Philadelphia, the INS then began moving petitioner southward, to Louisiana and Miami, in preparation for his deportation to Jamaica on December 20, 2001. On December 19, 2001, however, counsel for petitioner filed the instant habeas corpus petition, in conjunction with which petitioner was returned to Philadelphia.

■ As an initial matter, the Government contends that the only proper situs for this petition is the Eastern District of Pennsylvania because the only proper respondent is the INS District Director in Philadelphia, where petitioner is currently detained. *See* 28 U.S.C. § 2243 ("The writ ... shall be directed to the person having custody of the person detained.") But this ignores the fact that the Attorney General, who concededly is present in this District through his representative the United States Attorney, has custody and control of immigrant detainees, such as petitioner, in a very real and plenary sense. *See Arias–Agramonte v. Commissioner of INS,* 2000 WL 1617999, *5–6 (S.D.N.Y. 2000); see also Henderson v. INS,* 157 F.3d 106, 126 (2d Cir.1998) (noting the "extraordinary and pervasive role that the Attorney General plays in immigration matters"). Indeed, the relevant statutes vest the Attorney General with ultimate responsibility for both detaining and releasing aliens. *See* 8 U.S.C. § 1222(a); 8 U.S.C. §§ 1226(b), (c)(1), and (c)(2). Furthermore, unlike the case of a federal prisoner serving a criminal sentence, the practicalities of immigrant detention—involving (as this very case illustrates) frequent shifts of location, often at the very time when challenges are most likely to be pur-

sued (*i.e.,* immediately before deportation)—render it both unwieldy and unfair to make the only proper respondent the INS District Director who happens to have custody of the petitioner at the time the petition is filed. As stated in *Arias–Agramonte,* 2000 WL 1617999, *8, "where alien detainees are moved between districts so frequently, it is appropriate to name a respondent higher up in the INS chain of command." *Accord, e.g., Cinquemani v. Ashcroft,* 2001 WL 939664 (E.D.N.Y.2001) ("There is no question that the Attorney General is a legal custodian of [petitioner]"); *Pena–Rosario v. Reno,* 83 F.Supp.2d 349, 361 (E.D.N.Y.2000) (same); *Pottinger v. Reno,* 51 F.Supp.2d 349, 356 (E.D.N.Y.1999) (same); *Mojica v. Reno,* 970 F.Supp. 130, 166 (E.D.N.Y.1997) (same); *Nwankwo v. Reno,* 828 F.Supp. 171, 174 (E.D.N.Y.1993) (same).

■ In the instant case, all the proceedings affecting petitioner's deportation were conducted in the Southern District of New York, the district of his residence. At all times relevant the Attorney General was his custodian and is also represented in this District. Accordingly, petitioner's petition is properly before this Court.

■ On the merits, however, the first of petitioner's claims—that he was denied due process and equal protection in the deportation proceedings—must be rejected. Regarding due process, there is no doubt that the initial deportation proceedings before various of the immigration law judges was marred by infirmities, the most egregious of which occurred when the matter was assigned to an immigration law judge who had previously acted as a trial attorney representing the INS in an earlier aspect of the same proceeding but who nonetheless went forward with the assignment until he belatedly remembered his prior representation and recused himself. However, no significant rulings were made

during the period the matter was before the conflicted judge, and, more importantly, when the conflict was discovered the matter was reassigned to a new (and final) judge, Judge Vomacka, who held a seven-day, *de novo* hearing on the entire matter (the very remedy petitioner would have received if he had prevailed before the BIA) before ordering deportation. On appeal, therefore, the BIA properly found that any pre-Vomacka violations of petitioner's due process were harmless.

As for petitioner's claims that the proceedings before Judge Vomacka were themselves deficient in due process, those claims—involving Judge Vomacka's failure to state that he had reviewed the record, his allegedly summary findings of fact, and his refusal to delay the hearing to allow additional briefing—are frivolous on their face and were properly denied by the BIA. Likewise, petitioner's vague and largely conclusory claim that he was treated differently from other similarly-situated detainees in a manner that denied him equal protection (*see* Pet.Br. at 27–28) merits no further discussion.

■ There is, however, considerably more merit to petitioner's other claim, which is that he was wrongly denied the opportunity to apply for a discretionary waiver of the deportation order pursuant to former § 212(c) of the INA. Former section 212(c) reads as follows:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions [setting forth various grounds for exclusion].

Despite the fact that the section, on its face, only applies to lawfully admitted aliens who are not under an order of deportation, it was subsequently interpreted by the Second Circuit to permit the Attorney General to exercise similar discretion with respect to aliens who *were* facing deportation, *see Francis v. INS,* 532 F.2d 268 (2d Cir.1976), and this interpretation, though seemingly quite expansive, eventually became settled law, *see Immigration and Naturalization Service v. St. Cyr,* 533 U.S. 289, 295, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001).

Subsequently, however, in September 1996, § 212(c) was repealed altogether by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L.No. 104–208, 110 Stat. 3009. Nevertheless, § 309 of IIRIRA specifically provided that the repeal would not be retroactively applied to affect those aliens who were the subject of previously commenced deportation or exclusion proceedings. Since Small's deportation proceedings had began in 1989, he was therefore not affected by the repeal.[2]

Notwithstanding § 309, however, the BIA found, and the Government now argues, that another section of IIRIRA, § 321(b), retroactively eliminates Small's right to apply for § 212(c) relief because of the manner in which it defines "aggravated felony."

---

**2.** Even before repealing § 212(c), Congress, in enacting the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L.No. 104–132, 110 Stat. 1214, expanded the category of criminal convictions that would render an alien ineligible for relief under former § 212(c) to include certain of the crimes for which Small was convicted. That expan-

sion, however, was interpreted not to apply, retroactively, to deportation proceedings commenced prior to the enactment of AEDPA, *see Henderson v. INS,* 157 F.3d 106, 130 (2d Cir.1998), and hence did not affect Small so far as the availability of § 212(c) relief was concerned.

By way of background, the notion that certain felonies are sufficiently "aggravated" as to eliminate eligibility for immigration benefits otherwise available was first introduced as part of the Anti–Drug Abuse Act of 1988, Pub.L.No. 100–690, 102 Stat. 4181. However, at the time that Small's deportation proceedings commenced in 1989, none of the crimes of which he had been convicted (*i.e.*, possession of stolen property and robbery, on which the deportation proceedings were premised, or even the burglary, which was apparently overlooked) was classified as an aggravated felony.

In 1990, after Small's deportation proceedings began, but arguably before he first actually sought to apply for § 212(c) relief,[3] Congress expanded the definition of aggravated felony to encompass crimes of violence (including robbery) and also barred felons who had committed an aggravated felony for which they had served more than five years in prison from applying for § 212(c) relief. *See* Immigration Act of 1990, Pub.L.No. 101–649, 104 Stat. 4978. But this still did not bar Small, who otherwise fit within the prohibition, from seeking § 212(c) relief, since the 1990 Act expressly provided that the expanded definition of aggravated felony "only shall apply to offenses committed on or after the date of the enactment of this Act," *id.* at § 501(b), whereas the conviction for which Small had served more than five years,

*i.e.*, his robbery conviction, was entered in 1985.[4]

IIRIRA, however, which also makes use of the broadened definition of aggravated felony set forth in the 1990 Act, expressly applies the concept "regardless of whether the conviction was entered before, on, or after the date of enactment of this [Act]." *See* IIRIRA, § 321(b). Thus, for purposes of IIRIRA, Small's prior misconduct constitutes an aggravated felony.

Contrary to the Government's argument, however, this in no way bars Small's request for § 212(c) relief, because, as previously noted, § 309 of IIRIRA expressly bars such relief only to those whose deportation proceedings began after IIRIRA's enactment. Put another way, while someone whose prior misconduct is retroactively reclassified by § 321(b) of IIRIRA as an aggravated felony is thereby barred from seeking § 212(c) relief in connection with any deportation proceedings initiated after September, 1996, the retroactive reclassification is irrelevant to requests for § 212(c) relief made in connection with deportation proceedings initiated prior to September, 1996 because § 309 of IIRIRA makes clear that these prior applications are unaffected by IIRIRA.

■ Any other interpretation not only would render the various provisions of IIRIRA mutually inconsistent but also would contravene the now well-settled le-

---

**3.** While the record before the Court makes clear that Small's request to apply for § 212(c) relief was already pending in July, 1996, the record does not show when he originally made the request. *See* Pet.Br. at 4, n. 4. Determining the precise date of his request is irrelevant to the Court's instant analysis, however, both because the date of the request undisputedly preceded the enactment of IIRIRA in September, 1996 and because, in any event, the relevant date for IIRIRA purposes is the date Small's deportation proceedings began (1989), since IIRIRA only

eliminated § 212(c) relief for those whose *deportation proceedings* had not yet commenced in September, 1996.

**4.** Similarly, while theft and burglary offenses with sentences of at least five year were added to the definition of "aggravated felony" by the Immigration and Naturalization Technical Corrections Act of 1994, Pub.L.No. 103–416, 108 Stat. 4305, these new provisions only applied to convictions entered on or after the enactment date of October 25, 1994.

gal principle that the presumption against retroactive elimination of a vested right may only be overcome where Congress has clearly and unequivocally evinced its intent to retroactively eliminate the right. *See, e.g., Immigration and Naturalization Service v. St. Cyr,* 533 U.S. 289, 316, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001); *Landgraf v. USI Film Products,* 511 U.S. 244, 272–273, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994).[5] While, prior to the enactment of IIRIRA, Small did not have a right to a § 212(c) waiver, he had a right to have his request for such a waiver considered, a right that § 309 of IIRIRA fully preserved and that § 321(b) of IIRIRA cannot properly be interpreted to eliminate without doing violence to the overall meaning and design of the statutory language, as well as to the deeply rooted presumption against retroactive application of a statute.

Accordingly, the petition is granted, the case is remanded to the BIA with instructions to permit petitioner to apply for relief under former § 212(c) of the INA, and the stay of petitioner's deportation is continued pending further order of the Court. Clerk to enter judgment.

SO ORDERED.

---

**5.** Because, however, this principle was not clearly established as the law of the land prior to *Landgraf,* the Government's reliance on earlier cases, such as *Buitrago–Cuesta v. INS,* 7 F.3d 291 (2d Cir.1993), is misplaced.