**David CAMPBELL, Petitioner,**

v.

**Mary Ann GANTER, District Director, U.S. Citizenship and Immigration Services, New York District, Respondent.**

No. 04–CV–2975 (NGG)(RML).

United States District Court, E.D. New York.

Dec. 7, 2004.

David Campbell, Jamaica, NY, pro se.

Scott Dunn, United States Attorneys Office Civil Division, Brooklyn, NY, for Defendant.

## MEMORANDUM & ORDER

GARAUFIS, District Judge.

*Pro se* petitioner David Campbell brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the validity of his deportation order on the grounds that he was improperly denied the opportunity to apply for a waiver of deportability from the United States and an

adjustment of status. The respondent contends that Campbell's action should be transferred to the Southern District of New York because this court lacks territorial jurisdiction over Campbell's proper custodian, the Field Officer Director ("FOD") for U.S. Immigration and Customs Enforcement ("ICE") in New York, New York. If the court does not transfer the case, the respondent argues that Campbell's separate convictions for drug possession, criminal possession of a weapon, and burglary preclude his eligibility for any waivers or other relief from deportation. For the reasons set forth below, this court has jurisdiction over Campbell's petition for a writ of habeas corpus and the writ of habeas corpus is DENIED.

## I. Factual and Procedural History

Campbell, a native and citizen of Jamaica, entered the United States as a lawful permanent resident alien on June 30, 1973. In 1979, Campbell received two years probation following a conviction in Dade County, Florida for possession and transportation of 3 kilograms and 450 grams of marijuana. On March 5, 1991, Campbell was convicted in New York State Supreme Court, County of Queens, of criminal possession of a weapon in the fourth degree, in violation of section 265.01(1) of the New York State Penal Law. On June 26, 1996, Campbell was convicted, in New York State Supreme Court, County of Queens, of burglary in the first degree, under section 130.40(4) of the New York State Penal Law. For his burglary conviction, Campbell was sentenced to an indeterminate term of three to nine years.[1]

On November 1, 1996, the Immigration and Naturalization Service ("INS") placed Campbell in deportation proceedings through the issuance of an Order to Show Cause ("OSC"), charging Campbell with deportability under § 241(a)(2)(C) of the Immigration and Nationality Act ("INA" or "Act"), 8 U.S.C. § 1251(a)(2)(C), as an alien who was convicted of possessing a firearm, as defined in 18 U.S.C. § 921(a). Following a series of deportation hearings, on January 9, 1998, an Immigration Judge ("IJ") determined that Campbell was deportable due to his firearms possession conviction and that Campbell was not eligible for a waiver of deportation under INA § 212(c), 8 U.S.C. § 1182(c). The IJ further found that Campbell was ineligible for an adjustment of status under INA § 245(a), 8 U.S.C. § 1255(a), because, by virtue of his drug possession conviction, he was inadmissible as an alien who the Attorney General knows or has reason to believe is an illicit controlled substance trafficker. *See Matter of Rico*, 16 I. & N. Dec. 181, 186 (BIA 1977) (Resp.Ex.H).

Campbell filed an administrative appeal of the IJ's decision with the Board of Immigration Appeals ("BIA"). On September 23, 1998, the BIA dismissed Campbell's appeal. Campbell then filed a timely motion to reconsider the BIA's dismissal of the appeal, and on December 3, 1998, the BIA denied Campbell's motion.

Campbell filed a petition for a writ of habeas corpus before Judge Raggi in the United States District Court, Eastern District of New York, challenging his final deportation order. On July 9, 2002, Judge Raggi remanded Campbell's deportation order to the BIA to allow the BIA to consider whether Campbell was eligible for an adjustment of status following the Supreme Court's decision in *INS v. St. Cyr*,

---

1. The record does not indicate the length of time Campbell actually served for his burglary conviction. At the time Campbell filed his petition, he was residing with his family at his home in Jamaica, Queens.

533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001).

On September 19, 2002, the BIA reopened Campbell's case pursuant to Judge Raggi's order, and remanded the case to the IJ to allow Campbell to apply for relief under INA § 212(c). An IJ in New York City conducted a series of hearings between November 14, 2002 and June 6, 2003. On April 9, 2003, ICE (formally part of the INS) filed an additional charge of deportability against Campbell, charging him under INA § 241(a)(2)(A)(iii), 8 U.S.C. § 1251(a)(2)(A)(iii), as an alien deportable for commission of an aggravated felony as defined in INA § 101(A)(43)(g), 8 U.S.C. § 1101(a)(43)(G). The underlying conviction that supported this charge was Campbell's June 26, 1996 burglary conviction, which was on direct appeal at the time of his initial deportation proceedings from 1996 through 1998 and so was not considered in those proceedings.

On June 6, 2003, the IJ held that Campbell was deportable under INA § 241(a)(2)(A)(iii) because his burglary conviction was considered an aggravated felony. Resp. Ex. N. The IJ found that, as a matter of law, Campbell was not entitled to any relief from deportation. Because he committed an aggravated felony, Campbell was not eligible for a § 212(h) waiver. Without the § 212(h) waiver, Campbell was not eligible to seek an adjustment of status pursuant to § 245(a). The IJ also found that INA § 212(c) relief was not available to Campbell under *INS v. St. Cyr,* 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), because Campbell was found guilty following a trial by jury and *INS v. St. Cyr* applied only to convictions following a guilty or nolo contendere plea. As Campbell was not entitled to § 212(c) relief or an adjustment of status, the IJ ordered that Campbell be deported from the United States pursuant to the charges contained in the OSC.

On May 3, 2004, the BIA summarily affirmed the IJ's June 6, 2003 decision. The BIA denied Campbell's motion to reconsider on June 23, 2004. Campbell filed the instant *pro se* petition for a writ of habeas corpus before this court on July 14, 2004. Campbell named Mary Ann Ganter, District Director of U.S. Citizenship and Immigration Services ("CIS") for the New York District, as the sole respondent in his action. At the time he filed his petition, Campbell was residing at his home in Jamaica, New York.

## II. Jurisdiction of Court

Campbell named Mary Ann Ganter, the District Director of CIS, as the singular respondent in his habeas petition. The government contends that the FOD of ICE is the only proper respondent in this action and that further, this court does not have jurisdiction over the FOD because the FOD is located in New York, New York, under the exclusive territorial jurisdiction of the Southern District of New York. Each of the government's arguments is considered in turn.

### A. The FOD of ICE Rather than the District Director of CIS Is the Proper Party to Campbell's Action.

■ A writ of habeas corpus "shall be directed at the person having custody of the person detained." 28 U.S.C. § 2243; *Branden v. 30th Judicial Circuit Court,* 410 U.S. 484, 495, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973). As of March 1, 2003, the INS ceased to exist as an independent agency within the Department of Justice and its functions were transferred to the newly formed Department of Homeland Security ("DHS"). *See, e.g., Robledo–Gonzalez v. Ashcroft,* 342 F.3d 667, 667 n. 1

(7th Cir.2003). Under the Homeland Security Act, the INS' functions were divided into separate bureaus of DHS, with ICE handing immigration enforcement functions and CIS handling immigrant service functions. *See* Pub. Law No. 107–296, §§ 441, 451.

Although ICE, and not CIS, appears to have control over Campbell's deportation, the United States does not take issue with Campbell's naming of CIS as the sole respondent in his petition. Rather, the government strenuously argues that the respondent in a challenge to the validity of a deportation order is limited to naming as an adverse party the local official who exercises control over the petitioner's deportation—*i.e.* the New York FOD of ICE—and cannot include the Attorney General or some other high-level official. The government's emphasis on contrasting the local FOD of ICE with the Attorney General is curious given that the Attorney General is not named in this action. This court acknowledges that the question of whether the Attorney General is a proper respondent to a habeas proceeding brought to challenge a deportation order is as of yet unresolved in this circuit but declines to address it as it not before the court. *See Rumsfeld v. Padilla,* —— U.S. ——, —— n. 8, 124 S.Ct. 2711, 2718 n. 8, 159 L.Ed.2d 513 (2004) (declining to address issue); *Henderson v. INS,* 157 F.3d 106 (1998) (same).[2]

Campbell did not name the Attorney General as a respondent nor did Campbell appear to intend to name the Attorney General as a respondent. Rather, he mistakenly named CIS because he "believe[d] that [the District Director of CIS] is the legal person responsible for my immigration case and possible deportation jurisdiction if detained in the city of New York." Pet. at 2. As much as can be inferred from his petition, Campbell appeared to intend to name the district director responsible for his potential deportation as the respondent to his habeas action. "Implicit in the right of self-representation is obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983). Accordingly, the court will construe Campbell's petition as naming the FOD of the local ICE office as the respondent in this action, rather than the District Director of CIS.

## B. This Court Has Jurisdiction Over the New York FOD of ICE.

Relying upon the recent Supreme Court decision, *Rumsfeld v. Padilla,* —— U.S. ——, 124 S.Ct. 2711, 159 L.Ed.2d 513 (2004), the government asserts that this court does not have territorial jurisdiction over the instant petition because Campbell's immediate custodian is located in the

---

**2.** This court notes that the Eastern District of New York and the Southern District of New York have regularly recognized the Attorney General as a proper respondent to an alien's habeas corpus petition. *See, e.g., Batista–Taveras v. Ashcroft,* No. 03 Civ.1968, 2004 WL 2149095 (S.D.N.Y. Sept. 23, 2004) (Kaplan, J.) (Attorney General is proper respondent); *Garcia–Rivas v. Ashcroft,* No. 04 Civ. 292, 2004 WL 1534156 (S.D.N.Y. July 7, 2004) (Buchwald, J.) (same); *Walters v. Ashcroft,* 291 F.Supp.2d 237, 243 (Wood, J.) (same);

*Small v. Ashcroft,* 209 F.Supp.2d 294, 296 (S.D.N.Y.2002) (Rakoff, J.) (same); *Pena–Rosario v. Reno,* 83 F.Supp.2d 349, 362 (E.D.N.Y.2000) (Gleeson, J.) (same); *Pottinger v. Reno,* 51 F.Supp.2d 349, 357 (E.D.N.Y. 1999) (Weinstein, J.) (same). *But see Belvett v. Ashcroft,* No. 00 Civ. 2463, 2002 WL 287839 (S.D.N.Y., Feb. 27, 2002) (McKenna, J.) (Attorney General is not proper respondent); *Guerrero–Musla v. Reno,* No. 98 Civ. 2779, 1998 WL 273038 (S.D.N.Y. May 28, 1998) (Baer, J.) (same).

Southern District of New York. Should the government's novel argument be adopted, this district would not have jurisdiction over any challenges to a deportation order as all such challenges would have to be filed in the Southern District, where the ICE field office happens to be located. Although this court is intrigued by the government's invitation to reduce its docket, I find little support for the government's position. Contrary to the government's claims, *Padilla* does not strictly limit the jurisdiction of a district court in a non-core habeas proceeding to the district court with territorial jurisdiction over the custodian. Rather, jurisdiction under these circumstances continues to be a question of personal jurisdiction and venue. Because this court has jurisdiction over the custodian and venue is appropriate in the Eastern District of New York, the government's claim that this court lacks jurisdiction over Campbell's petition is rejected.

■ District courts are limited to granting habeas relief "within their respective jurisdictions." 28 U.S.C. § 2241(a). In *Padilla*, the Court held that in a habeas challenge to present physical confinement—a "core" proceeding—"the district of confinement was *synonymous* with the district court that has territorial jurisdiction over the proper respondent." *Id.* at 2723 (emphasis in original). Contrary to the government's expansive reading of *Padilla*, nothing in the Court's opinion can be read as endorsing an extension of the Court's holding to include a territorial limitation on the jurisdiction of a district court in non-core habeas proceedings, such as a challenge to a deportation order. Unlike *Padilla*, the district of confinement is *not* synonymous with the district court that has territorial jurisdiction over Campbell's immediate custodian. Here, Campbell is in the Eastern District of New York and

his custodian is in the Southern District of New York. Moreover, in addition to repeatedly emphasizing that *Padilla* involved a "core" habeas challenge, the Court in *Padilla* explicitly left open the question of whether aspects of its decision ought to apply to habeas petitions brought by alien detainees pending deportation. *Id.* at 2718 n. 8.

The government does not identify a single case wherein a court has held that jurisdiction is limited to the district court with territorial jurisdiction over the immediate custodian in a noncore habeas proceeding where, as here, the petitioner and custodian are not within the same district. Even in *Padilla*, from which the government derives its sole support, a majority of justices noted that the proper location for a habeas petition is best understood as a question of personal jurisdiction and venue. *Id.* at 2727–28 (Kennedy, J. concurring); *id.* at 2734 (Stevens J., dissenting) ("It bears emphasis that the question of a proper forum ... is not one of federal subject-matter jurisdiction ... [r]ather the question is one of venue ..."). Indeed, a consideration of personal jurisdiction and venue has long been a part of the Court's jurisprudence concerning the proper court under which to bring a habeas petition. *See Braden v. 30th Judicial Court of Kentucky*, 410 U.S. 484, 493, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973); *Moore v. Olson*, 368 F.3d 757, 759–60 (7th Cir.2004); *Garcia–Rivas v. Ashcroft*, 04 Civ. 292, 2004 WL 1534156, *4–5 n. 8 (S.D.N.Y. July 7, 2004) (inquiry into proper venue was still required in a non-core habeas proceeding following *Padilla*); *Mojica v. Reno*, 970 F.Supp. 130, 165–68 (E.D.N.Y.1997). Considering the Court's apparent intent to restrict the scope of its decision to core habeas proceedings in *Padilla*, and the overwhelming case law in support of a consideration of venue and personal jurisdiction in determining a court's jurisdiction

in a habeas proceeding, this court declines to extend *Padilla* to include non-core deportation proceedings.

■ This court is the proper forum for Campbell's action because it has personal jurisdiction over the FOD of ICE and venue is proper in the Eastern District of New York. Rule 4(e)(1) of the Federal Rules of Civil Procedure allows this court to authorize service of process on individuals in accordance with the laws of New York, which establish jurisdiction over persons located within the state. F.R.C.P. 4(e)(1); *see Eltayeb v. Ingham,* 950 F.Supp. 95, 99–100 (S.D.N.Y.1997) (asserting jurisdiction over District Director of INS located in Western District of New York) (citing *United States ex rel. Sero v. Preiser,* 506 F.2d 1115, 1127–28 (2d Cir. 1974)). The three factors considered in determining venue are (1) "where all the material events took place"; (2) where "records and witnesses pertinent to the petitioner's claim are likely to be found"; and (3) the relative convenience of the forum for the parties. *Henderson,* 157 F.3d at 127 n. 25 (quoting *Braden,* 410 U.S. at 493–94, 93 S.Ct. 1123). Applying these factors, it is clear that the Eastern District is the proper venue for Campbell's action. Campbell currently resides in Queens with his family and was convicted for two of his three offenses in New York Supreme Court, County of Queens.[3] The New York City Field Office of ICE has an area of responsibility that includes metropolitan New York City and Long Island.[4] The government does not claim, or plausibly could claim, that this court, located two miles from the ICE New York Field Office, and within its area of responsibility, is an inconvenient location for the FOD.

While the government raises the specter of "rampant forum shopping" in its effort to transfer this case from the Eastern District of New York to the Southern District of New York, traditional principles of venue apply to habeas petitions to constrain any such forum shopping. *See Braden,* 410 U.S. at 500, 93 S.Ct. 1123; *Nolasco v. United States,* No. 02 Civ. 3451, 2004 WL 2480441, *7 n. 16 (S.D.N.Y. Nov. 4, 2004); *Walters v. Ashcroft,* 291 F.Supp.2d 237, 243–44 (S.D.N.Y.2003). These considerations appropriately confine the petitioner to this district. Moreover, as the Eastern District and Southern District of New York are both within the same state and circuit, Campbell can hardly be accused of forum shopping.

As a final consideration, the issues underlying Campbell's petition have been fully briefed to this court, and "the predisposition in this Circuit to reach the merits of a dispute in service to judicial economy compel the assertion of jurisdiction by this Court." *Santos–Gonzalez v. Reno,* 93 F.Supp.2d 286, 292 (E.D.N.Y.2000) (quoting *Eltayeb,* 950 F.Supp. at 99 n. 6). Especially considering that the Southern District would apply the same law to this case, the interests of judicial economy militate in favor of the resolution of Campbell's habeas petition before this court at this time.

### III. Merits

Campbell contends that he is eligible for a waiver of deportation under INA § 212(c) and an adjustment of status under INA § 245(a). As set forth below, Campbell is not eligible for either form of relief.

---

3. Campbell's convicted for drug possession over thirty years ago in Dade County Florida has no bearing on whether venue is appropriate in the Eastern District of New York or the Southern District of New York.

4. *See* http://www.ice.gov/graphics/dro/contact.htm (last visited November 22, 2004). Long Island is within the territorial jurisdiction of the Eastern District of New York.

## A. INA 212(c) Waiver

### 1. Applicable Law

Prior to 1997, aliens deportable under the INA could apply to the Attorney General for a discretionary waiver of deportation pursuant to § 212(c) of the INA. INA § 212(c), *amended by* Anti–Terrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104–132 § 440(d), 110 Stat. 1214, 1277 (Apr. 24, 1996), *repealed by* Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub.L. No. 104–208, § 321, 110 Stat. 3009 (Sept. 30, 1996). To qualify for such relief, an alien was required to show that he or she: 1) was a lawful and permanent resident of the United States; 2) had an unrelinquished domicile of seven consecutive years; and 3) had not been convicted of an aggravated felony for which he or she had served a term of a least five years. *See* 8 U.S.C. § 1182(c). If the alien met these requirements, the Attorney General had the discretion to waive deportation. *Id.* In 1996, Congress enacted AEDPA, which eliminated relief for certain criminal aliens, including those who committed an aggravated felony, irrespective of the amount of time they served in prison. AEDPA § 440(d). Shortly thereafter, Congress repealed INA § 212(c) completely, effective April 1, 1997, and replaced it with an analogous form of relief called "cancellation of removal," which was not available to aggravated felons. IIRIRA § 304(b).

In *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), the Supreme Court held that AEDPA and the IIRIRA's elimination of § 212(c) relief could not be retroactively applied to aliens who had pled guilty or nolo contendere to deportable offenses. The Supreme Court reasoned that an alien making a guilty or nolo contendere may have been motivated by the desire to receive a reduced sentence in order to be eligible for a § 212(c) waiv-er. *Id.* at 323, 121 S.Ct. 2271. As a result, an alien would suffer a "severe retroactive effect" where the restriction and elimination of the time served component of § 212(c) from AEDPA and IIRIRA applied to pleas made prior to the enactment of these statutes. *Id.* at 325, 121 S.Ct. 2271.

In *Rankine v. Reno*, 319 F.3d 93 (2d Cir.2003), the Second Circuit considered whether AEDPA had a retroactive effect to aliens who were convicted of aggravated felonies pursuant to trials and verdicts reached prior to the enactment of AEDPA. The Second Circuit held that unlike an alien who pleads guilty, an alien who decides to go to trial would not have a comparable reliance interest on the availability of § 212(c) relief because "it is choosing 'to forgo fighting the conviction of a qualifying crime and enter a plea' that leads to an expectation of relief from removal." *Rankine*, 319 F.3d at 100 (quoting *St. Cyr v. INS*, 229 F.3d 406, 419 (2d Cir.2000)). Accordingly, the *Rankine* court held that aliens convicted of aggravated felonies pursuant to trial verdicts reached prior to the enactment of AEDPA are not covered by *St. Cyr. Id.* at 102.

In *Restrepo v. McElroy*, 369 F.3d 627 (2d Cir.2004), upon which Campbell primarily relies, the Second Circuit held that under certain limited circumstances, an alien who was convicted pursuant to a jury trial and verdict prior to the enactment of AEDPA could still potentially be eligible for § 212(c) relief. In *Restrepo*, an alien was eligible to apply for § 212(c) relief at the time of his conviction by a jury for a drug related offense, but claimed that he decided to defer the opportunity to apply for § 212(c) relief until a later time when his chances of receiving a waiver would be stronger due to a longer record of rehabilitation and community ties. *Restrepo*, 369 F.3d at 633. The petitioner argued that

AEDPA's elimination of 212(c) relief disrupted his reasonable reliance and settled expectations on the future application of a 212(c) waiver. In evaluating the merits of the petitioner's argument, the Second Circuit concluded that:

> [L]ike the aliens in *St. Cyr*, who sacrificed something of value—their right to a jury trial, at which they could obtain outright acquittal—in the expectation that their guilty pleas would leave them eligible for 212(c) relief, an alien like Petitioner also sacrificed something—the shot at obtaining 212(c) relief by immediately filing an application—in order to increase his chances of obtaining such relief later on.

*Id.* at 634–35. The Second Circuit remanded *Restrepo* to the District Court to determine whether the opportunity to apply for § 212(c) relief based on an expectation of future application of a § 212(c) waiver should be applied categorically, as in *St. Cyr*, or if a more individualized approach is appropriate. *Id.* at 640.[5]

### 2. Campbell is Ineligible for Relief Under 212(c).

■ In accordance with *Restrepo*, Campbell argues that he should be accorded the opportunity to apply for relief under INA § 212(c). In addition to his drug possession and burglary conviction, Campbell was convicted of criminal possession of a weapon in 1991. The Second Circuit has held that section 212(c) relief is not available for aliens convicted of a firearms offense. *Cato v. INS*, 84 F.3d 597, 600 (2d Cir.1996); *Drax v. Reno*, 338 F.3d 98, 109 (2d Cir.2003).[6] Unlike the petitioner in *Restrepo*, who was convicted of a drug related offense, Campbell did not have a reasonable expectation of the possibility of future § 212(c) relief because such a possibility never existed.

■ Moreover, following a jury trial, Campbell was convicted of burglary in the first degree on June 26, 1996 and sentenced to three to nine years of imprisonment. AEDPA, which became effective in April, 1996, precluded aggravated felons, regardless of time served, from § 212(c) relief. *See* INA § 212(c) (as amended by AEDPA § 440(d)); *Domond v. INS*, 244 F.3d 81, 85 (2d Cir.2001) (holding that application of AEDPA to eliminate the availability of § 212(c) relief was not impermissibly retroactive as to petitioners who had committed their crimes before AEDPA's effective date, so long as their convictions came after AEDPA's effective date). At the time of his conviction, the aggravated felony definition included a burglary conviction for which the term of imprisonment imposed is at least five years. INA § 101(a)(43)(G), 8 U.S.C. § 1101(a)(43)(G) (1995). Although Campbell's sentence was three to nine years, for

---

5. Whether *Restrepo* should be applied categorically or individually has not been determined as of the time of this Memorandum and Order.

6. Read literally, section 212(c) would permit discretionary relief only to those noncitizens who faced exclusion from the United States after leaving their United States domiciles temporarily and seeking readmission. In *Francis v. INS*, 532 F.2d 268 (2d Cir.1976), § 212(c)'s privilege of discretionary waiver for aliens in exclusion proceedings was extended to similarly situated aliens in deportation proceedings. *See Francis*, 532 F.2d at

272. A deportee and an excludee are similarly situated when the ground for the deportee's removal is the same as the ground for the excludee's denial of admission. *Cato*, 84 F.3d at 599; *Bedoya–Valencia v. INS*, 6 F.3d 891, 894 (2d Cir.1993). Grounds for exclusion are listed in § 212(a) and do not include firearms possession (crimes of moral turpitude and violations related to controlled substances are listed). Because a weapons offense is not a ground of exclusion listed in § 212(a), the Second Circuit reasoned that § 212(c) relief is not available for a firearms violation. *Cato*, 84 F.3d at 600.

the purposes of determining whether an individual is considered an aggravated felon, the maximum possible sentence, and not time actually served, is used. *See United States v. Galicia–Delgado,* 130 F.3d 518, 523 (2d Cir.1997); *In Re S–S–,* 21 I. & N. Dec. 900, 901–03 (BIA 1997). Thus, in addition to his firearms conviction, Campbell was ineligible for a § 212(c) waiver by virtue of his burglary conviction. Because the possibility of a future application for § 212(c) relief was precluded as a matter of law, Campbell's efforts to apply *Restrepo* to his case are unavailing.

### B. Campbell is Ineligible for an Adjustment of Status.

■ Campbell also seeks an "adjustment of status" pursuant to INA § 245(a), 8 U.S.C. § 1255(a). An adjustment of status is a form of relief that allows a deportable alien who would be admissible to the United States if he were seeking to enter the country to adjust his status to that of an alien seeking entry.[7] To be eligible for an adjustment of status under § 245(a), Campbell must be admissible to the United States. INA § 245(a). Campbell is currently inadmissible to the United States due to his burglary conviction, which constitutes a crime of moral turpitude under INA § 212(a)(2)(A)(i)(I).[8] *See Drozd v. INS,* 155 F.3d 81, 83–84 (2d Cir.1998) (af-

firming a BIA decision that found an alien to be deportable for having committed a crime involving moral turpitude based on a New York conviction for burglary). Because he is inadmissible, Campbell seeks the opportunity to apply for relief under INA § 212(h), which authorizes the Attorney General to waive certain criminal grounds of inadmissibility. Campbell sets forth several claims as to why he is entitled § 212(h) relief, each of which is addressed below.

■ Certain criminal acts that are eligible for a waiver under § 212(h) are not eligible for § 212(c) relief, and vice-versa. For example, an alien with a weapons conviction is eligible for a waiver of inadmissibility under § 212(h), but not for a waiver of deportation under § 212(c). Conversely, an alien convicted of drug possession is eligible for § 212(c) relief but not for a waiver of inadmissibility under § 212(h). Campbell claims he is entitled to the combination of § 212(h) and § 212(c) relief set forth in *Matter of Gabryelsky,* 20 I. & N. Dec. at 750. In *Gabryelsky,* the BIA determined that an alien with a drug conviction and a firearm conviction could simultaneously apply for both an a § 212(c) waiver and an adjustment of status, thereby eliminating the obstacle to relief otherwise posed by the other conviction. *Ga-*

7. Section 245(a) provides in pertinent part:

> The status of an alien who was inspected and admitted or paroled into the United States or the status of any other alien having an approved petition for classification under subparagraph (A)(iii), (A)(iv), (B)(ii), or (B)(iii) of section 1154(a)(1) of this title or may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is imme-

> diately available to him at the time his application is filed.
>
> 8 U.S.C. § 1255(a) (footnote omitted).

8. The respondent also asserts that Campbell is inadmissible to the United States from his drug possession conviction in 1979 under INA § 212(a)(2)(C), 8 U.S.C. § 1182(a)(2)(C), which is grounds of inadmissibility for an alien who the Attorney General knows, or has reason to believe, is an illicit controlled substance trafficker. *See Matter of Rico,* 16 I. & N. Dec. 181, 186 (BIA 1977). Because Campbell's burglary conviction already renders him inadmissible, the court need not reach the merits Campbell's inadmissibility from his drug possession conviction.

*bryelsky*, 20 I. & N. Dec. at 750. The *Gabryelsky* method has since been adopted by the BIA and endorsed by the Second Circuit. *Drax*, 338 F.3d at 111 (citations omitted).

Campbell's claim that *Gabryelsky* applies to his own case fails to acknowledge that, in addition to his drug and firearms convictions, he is also convicted of burglary. Even assuming Campbell has complied with the complex procedural requirements necessary to simultaneously seek § 212(c) and § 245(a) relief under *Gabryelsky* for his firearms and drug convictions (*see Drax*, 338 F.3d at 113–15), Campbell would still be left with his burglary conviction, which, as already discussed, is ineligible for either § 212(c) or § 212(h) relief. Because a conviction must be eligible for either § 212(c) or § 212(h) for an alien to avail himself of the *Gabryelsky* method, Campbell fails to qualify for this means of relief.

Campbell also relies on Judge Weinstein's decision in *Beharry v. Reno*, 183 F.Supp.2d 584 (E.D.N.Y.2002) *rev'd on other grounds*, 329 F.3d 51 (2d Cir.2003) to support his claim for § 212(h) relief. Noting the extreme and tragic impact deportation can have on the life on an alien and his family, Judge Weinstein attempted to reconcile the categorical bar of § 212(h) relief to aliens convicted of aggravated felonies with the international law obligations of the United States. *Id.* at 592–605. To harmonize international law with § 212(h), Judge Weinstein determined that "aggravated felony" should be narrowly construed so that "section 212(h) waivers are available to aliens ... who meet its stringent requirements of seven years residence and 'extreme hardship' to family—if these aliens have been convicted of an 'aggravated felony' as defined after they committed their crime, but which was not categorized when they committed the crime." *Id.* at 605.

Judge Weinstein's decision in *Beharry* was reversed for subject matter jurisdiction, *see* 329 F.3d at 63–64, and however compelling, is not the law. Moreover, even if it were the law, it does not apply to the instant proceeding. The crime committed by the petitioner in *Beharry* was not an aggravated felony at the time it was committed. By contrast, Campbell's burglary offense was considered an aggravated felony at the time of the burglary and remains an aggravated felony today. *Compare* INA § 101(a)(43)(G), 8 U.S.C. § 1101(a)(43)(G) (1995) with INA § 101(a)(43)(G), 8 U.S.C. § 1101(a)(43)(G) (2003). Accordingly, Campbell's claim for a waiver under *Beharry* fails.

## IV. Conclusion

For the reasons set forth above, Campbell's petition for a writ of habeas corpus is DENIED. The Clerk is directed to close the case.

SO ORDERED.